514 A.2d 172

**Joanne SCHEAFNOCKER**

v.

**Fred SCHEAFNOCKER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 9, 1986.

Filed Aug. 22, 1986.

Anthony W. DeBernardo, Jr., Ruffs Dale, for appellant.
Robert M. Stefanon, Greensburg, for appellee.

Before CAVANAUGH, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of the Court of Common Pleas of Westmoreland County dismissing Fred Scheafnocker/appellant's petition for custody of his minor children. We affirm.

The record discloses a course of events reflective of the present day dilemma in which courts from two states find themselves when parents attempt to secure custody of their child(ren) by surreptitious means and then enlist the aid of the state in which removal has been made to approve of the conduct so as to establish permanent custody in one parent and not the other.

Three hearings were conducted to resolve the issue of which State, Pennsylvania or Texas, had subject matter jurisdiction to decide the custody question. An examination of the transcripts produced thereby reveal that two children (Kevin, age 8; Colleen, age 10 at the time of the proceedings below) were born of the 1971 marriage between Joanne

and Fred Scheafnocker. The two separated in June of 1978 and were divorced in April of 1983 in Pennsylvania.

Although the children were born in Pennsylvania, the family lived in Ohio from 1972 until the appellant was laid-off by United States Steel Corporation and transferred to Texas to work in 1978. Joanne and the children remained behind, and, in fact, moved to Pennsylvania (where her parents and relations lived) until the appellant could get things settled in Texas. However, the appellant's work was shortlived (one year) and his unemployment compensation expired thereafter. Nonetheless, the appellant did provide Joanne with some monies to assist in the payment of various expenses, which supplemented the welfare she received and became interspersed with income she was able to generate, at times, from employment.

From June of 1978—October of 1981, Joanne and the children lived in Allegheny County. In November of 1981—April of 1982, they lived in Westmoreland County, but, because of the mid-year change of address, the school district (Norwin) would not permit the children to complete the last month of the term.

As a result, in April of 1982, the appellant flew to Pennsylvania and drove the children back to Texas to enroll them in a Harris County school until the completion of the semester at the end of May. Joanne then went to Texas in June and returned to Pennsylvania with her son, while the daughter remained with the appellant. However, when Joanne could not get H.U.D. (federal) housing because of a waiting list or unemployment compensation, she and Kevin went back to Texas and the children attended the whole school year (1982–1983) there. During this same period of time, Joanne obtained a temporary job to help support the children because the appellant was unemployed, and so she could "save up enough money to return to Pennsylvania."

The situation in Texas was such, according to Joanne, that she could no longer remain because the appellant had been living with a girlfriend in the same mobile home where the children were staying. After one week of this arrange-

ment, she moved in with her adopted daughter who was living in the same trailer park, and this afforded her the opportunity to take care of her children after school without having to live with the appellant.

Because Joanne felt that exposure to the appellant's living conditions were detrimental to the children, she returned to Pennsylvania at the completion of the 1983 school term and left a note to that effect (on June 27) for the appellant. Also, at this time, the divorce proceedings, which had been started in 1981 in Allegheny County, were completed (April, 1983).

For the 1983–1984 school session, Joanne enrolled the children at Hillcrest Elementary School in North Hunting-don, Westmoreland County, on August 30. They attended for one month before the appellant came from Texas on September 29 and removed them from this Commonwealth as they were boarding the school bus. Joanne was notified by the appellant of his actions (a little over an hour later) after he had left this jurisdiction.

On October 4, 1983, Joanne filed a complaint for custody in Westmoreland County (No. 1735 of 1983, C.P.). The appellant was notified and served the same by a Texas constable on October 14, with a hearing date set for November 10. The appellant did not appear on the advice of his out-of-state counsel.

At the November 10 proceeding, Joanne informed the court that earlier that same morning she had been served with a summons to appear in Texas on November 14 for a hearing. Of relevancy here, Joanne recounted that:

a) Kevin and Colleen have an older brother (Martin, 15) and sister (Lisa, 14) from Joanne's prior marriage.

b) The four children live together and get along well.

c) The children have lived in Westmoreland and Allegheny Counties for the last five years.

d) Colleen is a majorette and Kevin is a drummer in the school band.

e) Kevin and Colleen are involved in community activities, as well as their friends and relatives living in the Westmoreland County area.

f) She (Joanne) is presently employed and better able to support the children—the appellant has been unemployed for the previous two years, he has no benefits and he is not capable of providing medical care because Texas does not have welfare.

g) From 1978 to the present she (Joanne) has provided total support (care) to the children.

Counsel for Joanne also read into the record that the appellant "filed his original Petition [for Custody] in the 310th Judicial District Court in the State of Texas as of the 27th day of October and this would be approximately two weeks after he was served that there was a hearing ... here".

At the completion of Joanne's testimony, the court made findings of fact and conclusions of law leading to the award of the children to her, having initially determined that it had subject matter jurisdiction.

Joanne did travel to Texas for the November 14 proceeding, but it was re-scheduled for November 21. As for a motion to quash filed by Joanne, because of the Pennsylvania court's entry of a custody order, the Texas court refused to honor it because, as stated by Joanne, a signature was missing from the document. The Texas court assumed jurisdiction and decided that the children would stay in Texas until a home-study was done of each of the residences involved.

In an attempt to facilitate the process, Joanne asked the court in Pennsylvania whether it would conduct a home-study of her premises for the Texas court. This was declined. In Joanne's mind this seemed to delay the matter even longer because of the additional temporary restraining order issued denying her access to the children. Thus, Joanne, not able to cope with not seeing her children, traveled to Texas on January 15, 1984 and returned them to Pennsylvania.

The second in a series of hearings was held. This time it was prompted by the appellant's petition seeking to have the Westmoreland County court strike its November, 1983 order giving custody to Joanne. The appellant claimed:

1) Jurisdiction did not lie in Pennsylvania.

2) Joanne violated the Uniform Child Custody Jurisdiction Act by "not informing th[e] Court fully of the proceeding which was going on and pending in the State of Texas.

3) Fraud was committed on the court as to its obtaining jurisdiction; certain matters testified to were incorrect.

4) Subsequent to the Pennsylvania court's custody order, "the entire matter was relitigated in the State of Texas, at which time the Court in Texas reviewed th[e Pennsylvania] Court's Findings of Fact and Conclusions of Law, [its] Order, and then entered an Order of its own awarding custody to [the appellant]."

5) Under the Uniform Child Custody Jurisdiction Act, the Texas court's action "is a modification of this [Westmoreland County court] Order, that this Court ought to immediately give credence to."

The appellant's counsel went on to note that the children were in the Commonwealth, according to Joanne's testimony at the November hearing, "from May of 1983" until "the action was commenced in October of 1983." This, the appellant contended, fell short of the six-month requirement necessary to establish home-state jurisdiction in Pennsylvania under the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.). See 42 Pa.C.S. § 5343.

Counsel for the appellant likewise argued that, because Joanne had been served with notice of the Texas action (see Exhibit # 1) at the November 1983 proceeding, the Pennsylvania court was required to stay the proceedings and communicate with the Texas court, as required by signators to the U.C.C.J.A. (of which Pennsylvania and Texas are) under Section 5347(c). In addition, counsel for the appellant produced a Texas decree establishing custody of the children in

the appellant, and, as observed by counsel, because this came after the Pennsylvania court's November 1983 hearing, it constituted a "modification" of the earlier Pennsylvania custody order and should take precedence.

Thereafter, the appellant took the stand and attempted to refute Joanne's earlier testimony that she had been the sole contributor to the children's welfare by producing cancelled checks totalling $5,100 to evidence his contribution to the support of the children. On the question of jurisdiction, the appellant admitted being served with a certified mail notice of the Pennsylvania action as to a November hearing, but he stated that this occurred subsequent to the commencement of the Texas cause of action, which papers were submitted before the Harris County court "the following Monday when [he] brought the children back from Pennsylvania down to Texas."

The appellant recounted the events surrounding the taking of the children between Pennsylvania and Texas from April of 1983 through January of 1984, which was inconsistent with his complaint that the last removal occurred in February of 1984. He also pointed out an error in the pleadings referring to Joanne having knowledge of the Texas decree of "April 1984," when she took the children in "February of 1984." He offered that the April 1984 decree really was referring to the November 21, 1983 Show Cause Hearing in Texas, wherein he received custody.

The last of the trio of hearings on the question of jurisdiction took place on August 27, 1984. Both sides were given additional opportunity to present evidence and testify to matters supportive of their respective positions. At the completion of the proceeding, an opinion and order were issued denying the appellant the relief requested. This appeal followed.

The succeeding three issues are raised by the appellant for our consideration:

1) Was Pennsylvania the Home State of the Children so as to Attach Jurisdiction in Pennsylvania?

2) Did the Westmoreland County Court err in not Staying the November 1983 Custody Hearing After Being Made Aware of Simultaneous Proceedings in Texas?

3) Did the Court err in not Granting the Appellant's Request for Relief and Honoring the Texas Decree?

As for Point # 1, it cannot be denied that at the time Joanne/appellee instituted her custody action in Pennsylvania (October 4, 1983), the children had not been residents "for at least six consecutive months" prior thereto so as to consider Pennsylvania the "home state", for an initial custody determination, under 42 Pa.C.S. §§ 5343, 5344(a)(1). In fact, the appellant had taken them back to Texas on September 30, 1983. However, "the Act clearly implies that there *will* be factual situations that will impel a court to accept jurisdiction even when 'home' jurisdiction exists elsewhere." *Hattoum v. Hattoum*, 295 Pa.Super. 169, 175, 441 A.2d 403, 406 (1982) (Emphasis in original). Herein, the court below found the "substantial contacts", an alternative basis for securing jurisdiction under Section 5344(a)(2) of the U.C.C.J.A. (see *Bem v. Bem*, 316 Pa.Super. 390, 463 A.2d 16 (1983)), to be more compelling. (See Lower Court Opinion at 9)

The facts advanced by the appellee to the court below are not to be minimized. For example, the children were born in Pennsylvania and their medical records for treatment of various childhood maladies are present here. The children lived in this Commonwealth for four years prior to changing addresses to Texas, which the appellee thought would be beneficial for the unity of the family. As testified to by the appellee, when she arrived in Texas and found her then husband living with another woman, she decided that she could not live under the same roof and moved in with her daughter from her first marriage, who happened to live in the same trailer park as the appellant. The appellee did not feel that these circumstances were conducive to raising a family. However, she was destitute upon arriving from Pennsylvania, and "so financially [she] had no way of coming back." Thus, she obtained temporary employment

just until she was able to accumulate sufficient income "to return to Pennsylvania."

The appellee never regarded Texas as her home, as evidenced by the retention of her driver's license and voting status in Pennsylvania. In fact, she "was unable to vote in Texas, they refused [her] voting because it was not [her] residence." She is now employed as an insurance trainee here.

Moreover, the children have their maternal grandparents and other relatives in Pennsylvania; the father's parents live in Ohio; the religious training and religious affiliation has been in Pennsylvania. Consequently, there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the children. 42 Pa.C.S. § 5344(a)(2).

The appellant's second point relates to the claim that the Westmoreland County court was "obligated" to stay the November 10, 1983 custody hearing, having been informed that "Texas had assumed jurisdiction and had issued a restraining order upon [the appellee] precluding her from getting near the children." (Appellant's Brief at 4)

The issue raised is to be examined "as of the time the petition for custody is filed", and not at time the subsequent hearings (on August 3 and 27 of 1983) were conducted to re-evaluate jurisdiction, as was argued by counsel for the appellee below. See *Sagan v. Sagan,* 261 Pa.Super. 384, 388 n. 1, 396 A.2d 450, 452 n. 1 (1978).

At the time the appellee returned with her children to Pennsylvania in June of 1983, as well as when the appellant removed them back to Texas in September of the same year, there was no custody order in effect. Thus, neither party violated any laws.

Jurisdictional inquiry begins with the appellee's filing for custody in Pennsylvania on October 4, 1983. The appellant was served with a copy of the same and notified of a November 10 hearing therein by October 15. Likewise, on the date of the hearing, the appellee had been served with a

notice that a hearing would be conducted in Texas on November 14. This information was stated in open court to the judge hearing the matter at bar. The appellant's counsel urges that at this stage the Pennsylvania court was required to halt the proceedings and communicate with the Texas court, in which another proceeding was pending, given the provisions of 42 Pa.C.S. § 5347.

Under subsection (c) of Section 5347, a "stay" shall be issued and communication with the out-of-state court must be had only "[i]f the court is informed during the course of the proceedings that a proceeding concerning the custody of the child[ren] was pending in another state *before the court assumed jurisdiction....*" (Emphasis added)

■ Instantly, as already stated, the court below acquired jurisdiction of the case on October 4, whereas the appellant's affidavit attached to his request for relief by the Texas court was signed by him on October 24. Therefore, the Pennsylvania court, after assuming jurisdiction, was required under subsection (c) of Section 5347 only to "inform" the Texas tribunal of what was transpiring in Pennsylvania "to the end that the issues m[ight] be litigated in the more appropriate forum." It was not obligated to hold the proceedings in abeyance.

In like fashion, we note that the Texas court failed to issue a "stay" and communicate with the Pennsylvania court once the appellee produced the out-of-state custody order at the November 21, 1983 hearing.

The transcript of the November 21 proceeding discloses that the appellee recounted securing the order in question and remarking about the "significant connections" with Pennsylvania, e.g., friends and relatives in this Commonwealth; living here from 1978–1982; and the nine-month period the children spent in Texas going to school, but never severing their ties here.

It appears that the Texas court was not too disposed to hear the appellee's motion to strike the appellant's petition for relief, for when counsel for the appellee objected to the

cross-examination of her client as to welfare obtained in Pennsylvania, claiming that this information had been "offered on the motion—the Plea of the jurisdiction only in order to show a significant connection with the children in the state of Pennsylvania ...," the Texas court observed:

> Well, counsel, about the only significant connection with any state was the continuous nine months the children resided right here. There had been no prior Orders of the Court prior to that time. Each one had an equal right.

Curiously enough, no mention was made as to the impact of the existing Pennsylvania custody order on the litigation. Except, in the April 1984 order making the appellant the "Temporary Managing Conservator of the children", the Texas court stated that it had jurisdiction of the case "and that no other court ha[d] continuing jurisdiction of this cause." Therefore, it would appear that the Texas court decided, as counsel for the appellant framed the action, to modify the Pennsylvania custody order.

As a signator to the U.C.C.J.A., the Texas court was required to find that this Commonwealth did not have jurisdiction "substantially in accordance" with said Act. See 42 Pa.C.S. § 5355(a). Nowhere in the record before us is there any evidence of any such determination. Moreover, since we have already determined that "substantial contacts" existed between the appellee and this Commonwealth the Texas court's conduct would appear to be at odds with 42 Pa.C.S. § 5344(a)(4). As an aside, we would mention that the appellant neglected/failed to set forth in his petition for a hearing in Texas (sometime after October 24) that there was an action *pending* in Pennsylvania on the question of custody as required by 42 Pa.C.S. § 5350(c).

The appellant's counsel's efforts to minimize this nonfeasance, by averring below that Texas counsel informed the court there of the Pennsylvania proceeding "orally", caused the court below to observe quite correctly:

> Well, either number one it happened as the pleadings show, that Judge Daggett [in Texas] was never advised

of the proceedings here and entered the order or, second-ly, he was appraised [sic] by your client's attorney there and just ignored the proceeding.

The latter might be the more rational inference from the recitation of what transpired at the November 21 hearing in Texas, and the subsequent entry of the April 1984 decree by the same court on the ground that no other court appeared to have continuing jurisdiction in the affray.

From what we can gather, both Texas and Pennsylvania had enough of an interest in the litigation to assume juris-diction of the dispute, e.g., Texas was the "home state" for at least six months prior to the appellee's abduction of the children to Pennsylvania (42 Pa.C.S. §§ 5343, 5344(a)(1)), and Pennsylvania had "significant connection" with the children and parent seeking relief (*Id.* at § 5344(a)(2)).

The only downfall appears to have been the failure of either court to *communicate with the other*, once it was learned (whether it be before, during or after the assump-tion of jurisdiction) that proceedings had been commenced or papers filed in the other's state. 42 Pa.C.S. §§ 5342, 5347. This failure to communicate has spawned the instant litigation, which is in direct contravention to the stated purposes of the U.C.C.J.A., e.g., avoid jurisdictional compe-tition and conflict with courts of other states in matters of child custody; promote cooperation with the courts of other states to the end that a custody decree is rendered final; discourage continuing controversies over child custody; avoid relitigation of custody decisions of other states; and facilitate the enforcement of custody decrees of other states. See 42 Pa.C.S. § 5342(a).

Accordingly, inasmuch as Pennsylvania has, at least, an interest in the placement of the children equal to Texas, we see no reason to invalidate the actions of the court below on the question of *jurisdiction*. In addition, the Commission-ers' Note to Section 6 of the U.C.C.J.A., concerning simulta-neous proceedings in other states, reads: "When the courts of more than one state have jurisdiction ... priority in time determines which court will proceed in the action...."

Commissioners' Note, 9 Uniform Laws Annotated at 135 (1979); see also 42 Pa.C.S. § 5347(c). It is undisputed that the appellee filed her custody complaint before the appellant's submission of his petition in Texas seeking the same relief. As a result, the Pennsylvania court was not required to decline jurisdiction since in October of 1983 there was no other court which was a more appropriate forum. See 42 Pa.C.S. § 5344(a)(4); *Matter of D.L.S.*, 278 Pa.Super. 446, 450, 420 A.2d 625, 627 (1980). This necessarily renders ineffectual the last of the appellant's complaints as well.

However, we are not at this time prepared (or asked) to rule on the propriety of the Westmoreland County court's custody order of November 10, 1983. The reasons become self-evident from a review of the record.

First, the validity of the custody order is not assailed in either of the parties' briefs, nor is it treated by the court below—it having been observed that the appellant never appealed the initial custody order. Yet, interestingly enough, the court below states in its opinion to us at pages 10–11 that it:

> ... acquiesced to have a hearing on the father's Petition to Deliver Custody to him notwithstanding the fact that he raised the same issues he could have argued in the initial custody case filed by the mother. This Court believes this case has been litigated and relitigated with identical results found by this Court.

It would seem, at first blush, that the custody question was permitted to be relitigated despite the appellant's failure to appeal the matter earlier. This would be proper since a custody order is never permanent but always subject to modification, if circumstances are presented to warrant an alteration in the award. See 42 Pa.C.S. § 5355; *Commonwealth ex rel. Zaubi v. Zaubi*, 275 Pa.Super. 294, 418 A.2d 729 (1980); *Commonwealth ex rel. Tucker v. Salinger*, 244 Pa.Super. 1, 366 A.2d 286 (1976); Bertin, Pennsylvania Child Custody—Law Practice, and Procedure, § 1.6.1 (1983).

Nonetheless, at the last two hearings (on August 3 and 27 of 1983), counsel for the appellant restricted, and the court

agreed, the questions being asked of the parties solely to a determination of the jurisdictional controversy. In particular, counsel for the appellee was refused the opportunity to present the testimony of a psychologist who would have supposedly testified to some psychological trauma and emotional harm to the children since the initial custody order. As the court below put it, " ... I'm only interested for the purposes of this particular hearing to consider the issue of jurisdiction."

We emphasize that the court below did *not* hold an evidentiary hearing on best interests of the children as to custody because it restricted the proceedings to the question of subject matter jurisdiction as to the initial custody order under U.C.C.J.A. Therefore, we believe that the parties themselves and the court below have restricted the issue on review to one of whether the tribunal below had the authority to act on the October 4, 1983 Complaint in Custody of the appellee/mother.

We find that under the applicable case law and U.C.C. J.A., the court acted properly in deciding the appellee's complaint, and it need not have deferred to another jurisdiction on a matter rightly before it for review.[1]

Judgment affirmed.

1. Even if we wanted to review the lawfulness of the custody order, we would be hampered in our efforts to do so because the type of objective evidence necessary to assess the best interests and general welfare of the children cannot be acquired exclusively from the parties themselves. In the hearing conducted below, only the children's parents testified. There was no testimony proffered from disinterested witnesses bearing upon the present capabilities of the parties to provide the children with a stable environment. See *Tettis v. Boyum*, 317 Pa.Super. 8, 463 A.2d 1056 (1983) for a listing of those matters which an appellate court deems relevant in making its determination as to the propriety of a lower court's custody ruling.

It is to be emphasized that the court below had the jurisdiction to decide the appellee's complaint, and it was not divested of such authority by the mere notice that a hearing (the substance of which was never disclosed to the court below) was to take place in Texas subsequent to the deliberations set for inquiry in Pennsylvania. We do not believe that the U.C.C.J.A. requires otherwise.

We do advise that in the future, in order to effectuate the purposes set forth in the U.C.C.J.A., a spirit of cooperation be manifested to a

degree higher than that exhibited during the proceedings involving the case at bar. If this occurs, it is inevitable that duplicative litigation will be minimized or eradicted altogether.