556 A.2d 1379

**Paul H. GOODMAN**

**v.**

**Lorraine GOODMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 16, 1988.

Filed April 6, 1989.

375

Cathy M. Lojewski, North East, for appellant.

Robert C. Ward, Erie, for appellee.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an order of the Court of Common Pleas of Erie County holding appellant-mother in contempt and awarding physical and legal custody of a minor child to appellee-father. Appellant contends that (1) a custody order entered by a Pennsylvania court was later modified by an order of a West German Court thereby divesting Pennsylvania courts of the authority to hold appellant in contempt; (2) the court below lacked in personam jurisdiction and venue; and (3) the court abused its discretion in holding appellant in contempt. For the reasons that follow, we affirm the order below.

This custody battle has been waged on three fronts: Philadelphia, Pennsylvania, Erie, Pennsylvania, and the Federal Republic of Germany. For the sake of clarity, the proceedings in each venue will be discussed separately even though at times they have coincided. The parties were married on February 16, 1980, in Luzerne County, Pennsylvania, and they had one child, Henry John Goodman, who was born July 21, 1980, in Philadelphia. Until the parties separated on May 16, 1981, they and the minor child continued to reside in Philadelphia. On May 29, 1981, a custody action was commenced by appellant in the Court of Common Pleas of Philadelphia County (hereinafter "the Philadelphia Court"). *See* Lower Court Memorandum and Order, November 17, 1987 at 2. In the meantime, appellant-mother and Henry John had moved from the marital residence to the home of appellant's parents in Pottstown, Pennsylvania, where they lived through June 1981.

As of July 1, 1981, appellant, who is a physician in the United States Army, was to be stationed at Walter Reed Army Medical Center in Washington, D.C.; at the end of June 1981, she and the child moved to Silver Spring, Maryland. The parties were divorced by a decree entered by the Philadelphia Court on May 4, 1982. Approximately sixteen months later, on August 29, 1983, the court entered, by stipulation, a temporary order awarding primary physical custody of Henry John to appellant and awarding partial physical custody on alternate weekends to appellee. The proceedings before the court continued as follows:

> At about the same time, protracted hearings on the issue of custody began in earnest.
>
> Throughout this time, Mother ... failed to abide by the Court's order for partial custody in Father.
>
> Father filed several Petitions for Contempt....
>
> On May 13, 1985, when Mother and Father were personally before [the] Court, [the Court] entered another temporary partial custody order in favor of Father and also colloquied Mother with respect to her obligation to comply with the Order. In addition, and because of a

suggestion raised by Father that Mother intended to flee the jurisdiction by obtaining new Orders from her employer, the United States Army, [the Court] questioned Mother as to her residence, intentions for residence, transfer intentions, etc. and provided that she be personally served that very day with notice of further hearing in the matter for July 3, 1985. At all times, Mother informed me that she intended to return to the Court on July 3, 1985 for further, and [the Court] had hoped final, hearings in the matter.

Nonetheless, Father learned that Mother was indeed intending to flee the jurisdiction and on June 27, 1985, and in my absence, Judge Posarina of this Court entered an Order placing physical custody of the child with Father and directing the sheriffs to enforce that Order. This Order was entered after specific findings as to Mother's intention to remove the child from the jurisdiction of the Court.

Lower Court Memorandum and Order, November 17, 1987 at 1–3.

The next hearing in this case was held on July 3, 1985, as had been previously arranged. Appellant, however, failed to attend, even though she had told the court that she would be present. N.T. May 13, 1985 at 46; N.T. July 3, 1985 at 2–3. Further, appellant had notice of the hearing, as the court had informed her of it during the May 13 hearing, by mail, and again, during a telephone conversation. N.T. July 3, 1985 at 2–3. Appellee also had mailed notices of the hearing to appellant, which were returned, having been postmarked "Return to sender. Moved. Left no address." *Id.* at 4; *see also* Exhibits P–1 to P–6, July 3, 1985 (included in record in *Goodman v. Goodman*, No. 81–13692, *appeal docketed*, 3436 PHL 87 (appeal filed Dec. 11, 1987)). At the July 3 hearing, appellee

produced evidence showing that Mother was intending to remove the child to the Federal Republic of Germany and [the Court] entered Orders on July 3, 1985, setting forth the history of the matter, Mother's failure to appear and

placing custody of Henry Goodman with Father. [The Court] directed that different Orders be served on both the Department of State of the United States of America and the United States Army, and [the Court] also found Mother to be in contempt of several Orders of this Court and fined her for her obdurate and vexatious conduct. The Order placing custody in Father was reaffirmed and [the Court] directed that the legal authorities assist in the enforcement of this Order.

Lower Court Memorandum and Order, November 17, 1987 at 3–4. Additionally, the court ordered that appellant would have the opportunity to purge herself of the contempt by appearing at the next scheduled hearing. N.T. July 3, 1985 at 21–22.

On October 9, 1985, the Philadelphia Court held another custody hearing at which appellant was neither present nor represented by counsel. Both the court and appellee had mailed notices of the hearing to her. N.T. October 9, 1985 at 2–3. During the hearing, the court was specifically informed that appellant knew even before the May 13 hearing that she was to be reassigned overseas as she had applied for an overseas transfer on April 2, 1985, received the notice of reassignment on April 8, and received authorization to take the child with her on April 26. *Id.* at 5–6; *see also* Exhibit 6 (April 2, 1985 reassignment request; April 8 reassignment order; April 26 authorization for concurrent travel for dependent Henry John Goodman). According to her reassignment orders, appellant was to have reported overseas between June 27 and July 1, 1985, *see* Exhibit 6. We note that appellant's whereabouts during both the July 3 and October 9 hearings were confirmed by appellant in her appellate brief: she was in West Germany, having departed on May 15, 1985 and arriving there the following day. Brief for Appellant at 6. In other words, she departed just two days after the May 13 hearing at which she had assured the Philadelphia Court that she would attend the next scheduled hearing. N.T. May 13, 1985 at 46; Lower Court Memorandum and Order, November 17, 1987 at 1–3.

The court considered several sanctions against appellant for her continued failure to comply with the then-temporary custody order and her apparently willful disregard of the court's authority and process. The court entered a final order awarding physical and legal custody of Henry John to appellee under the supervision of the Erie County Department of Human Services and reserved decision on other outstanding sanctions and petitions. *See* Lower Court Opinion, February 3, 1989 at 3 (included in record in *Goodman v. Goodman,* No. 81–13692, *appeal docketed,* 03436 PHL 1987 (appeal filed Dec. 11, 1987)); Lower Court Memorandum and Order, November 17, 1987 at 4–5; N.T. October 9, 1985 at 9–16; Lower Court Order, October 9, 1985. No appeal was taken from the order of October 9, 1985.

Some twenty-five months later, on November 17, 1987, the Philadelphia Court issued a Memorandum and Order for the purpose of explicating its prior order dated October 9, 1985.[1] The issuance of that order seemingly was an accommodation to the West German Courts, as the lower court states,

> The German courts were confused as to the notation 'decision reserved' on our order of October 9, 1985; in particular, they wondered about whether the order granting [custody to] Mr. Goodman was a final order. Therefore, on November 12, 1987, we entered an order solely for the purpose of clarifying previous actions and orders of this Court.

Lower Court Opinion, February 3, 1989 at 2. On November 17, 1987, the following order was recorded by the court:

> 1. That physical and legal custody of Henry John Goodman was awarded to his Father, Paul Goodman, on October 9, 1985;
>
> 2. That Mother has been found in contempt of this Court and that in over two years she has taken no steps to purge herself of this contempt.

---

1. The record does not disclose the means by which the Philadelphia Court was apprised of the confusion surrounding its October 9, 1985 order.

3 That Mother has continued to refuse to comply with the custody order of this Court entered October 9, 1985.

4. That bench warrants for the arrest of Mother are outstanding in this Commonwealth, and that the Court hereby requests the lawful authorities of other jurisdictions to assist in the enforcement of the Orders of this Court dated June 27, 1985, July 3, 1985, October 9, 1985, and this date in that the law enforcement authorities or other jurisdictions are specifically requested to obtain the minor child, Henry Goodman, remove said child from the physical possession of his Mother, and return said minor child to the lawful custody of his Father in this jurisdiction.

Lower Court Memorandum and Order, November 17, 1987 at 5–6. An appeal from the November 17 order currently is pending in this Court. *See Goodman v. Goodman,* No. 81–13692, *appeal docketed,* 3437 PHL 1987 (appeal filed Dec. 11, 1987).

Concurrent with the Philadelphia County proceedings, the Court of Common Pleas of Erie County (hereinafter "the Erie Court") was grappling with this case. The Erie Court became involved when appellee, who had relocated in Erie County, petitioned that court to register the final Philadelphia custody order of October 9, 1985. The court granted the petition. *See* Lower Court Order, April 7, 1986. Thereafter, on October 15, 1987, appellee filed a contempt petition, along with a notice and order to appear. After a hearing, held on November 16, 1987, at which appellant was represented by counsel but from which she was absent, the Erie Court granted appellee's petition.[2] Appellant then filed a request for reconsideration, which was denied. On December 8, 1987, the Erie Court entered the following contempt order:

1. Physical and legal custody of Henry John Goodman is again awarded to the father, Dr. Paul H. Goodman.

---

2. Significantly, appellee testified that as of the date of the hearing more than three years had passed since he last saw his son. N.T. November 16, 1987 at 13.

2. Mother is in contempt of this Court and in over two years has taken no steps to purge herself of this contempt.

3. The mother's continued refusal to comply with the Order of this Court is deemed willful and intentional and obstructive.

4. Bench warrants shall be issued for the arrest of the mother in this Commonwealth and the Court hereby instructs the lawful authorities of other jurisdictions to assist in the enforcement of the Orders of this Court and its predecessor Orders issued out of the Court of Common Pleas of Philadelphia County and this Order issued presently, and that the law enforcement authorities of other jurisdictions are specifically requested to obtain the minor child, Henry Goodman, and remove the child from the physical possession of his mother, and return said minor child to the lawful custody of the father in this jurisdiction.

5. A bench warrant shall be issued for the arrest of the mother for violations of the laws of the Commonwealth of Pennsylvania, to-wit 18 Pa.C.S.A. 2904.[3]

6. Continued failure of the mother to return the child, causing the father to spend excessive sums of money on counsel fees and expenses, now warrants the assessment of those counsel fees and expenses in the amount of

---

3. Section 2904 governs interference with the custody of children, which is a felony of the third degree unless:

(1) the actor, not being a parent or person in equivalent relation to the child acted with knowledge that his conduct would cause serious alarm for the safety of the child, or in reckless disregard of a likelihood of causing such alarm. In such cases, the offense shall be a felony of the second degree; or

(2) the actor acted with good cause for a period not in excess of 24 hours; and

(i) the victim child is the subject of a valid order of custody issued by a court of this Commonwealth;

(ii) the actor has been given either partial custody or visitation rights under the order; and

(iii) the actor is a resident of this Commonwealth and does not remove the child from the Commonwealth.

In such cases, the offense shall be a misdemeanor of the second degree.

18 Pa.C.S.A. § 2904.

$16,000.00 in favor of the Petitioner and against the Respondent.

Memorandum Opinion and Order, December 8, 1987 at 5–6. This timely appeal followed.

In the third venue, the Federal Republic of Germany, appellant petitioned the courts for custody of Henry John even before her arrival in May 1985; her attorney stated at the Erie contempt hearing in Erie that

in fact, according to the order that was made by the German Court that it was in April of 1985, she had her orders for making this assignment to West Germany and she had this information before the Family Court there and received the Family Court's permission to allow her and her child to go to West Germany.

N.T. November 16, 1987 at 18. Other than the testimony of appellee, the present record contains very little information about the West German proceedings.[4] Appellee recounted those proceedings as follows:

There was only one hearing that I was represented by counsel and that was on September 16th, I believe, or September 19th, I'm not sure of the date, I can look it up—that I was represented by counsel at that hearing. There was no—on the 29th of December, 1985, there was an emergency hearing in which I did not have any counsel at all in Germany and then when I did get the orders finally, this was several months later, this wasn't until April, I managed to get them translated. I took them to a local attorney and he advised me that I should get a German Attorney. So working through my attorney here, Harry Byrne in Philadelphia, it was about two months later that we secured Elson Nowell. The German Court scheduled a hearing, preliminary hearing in September at which time he was present. However, it was

4. We note that appellant included in her reproduced record copies of orders issued by the West German court, and their English translations, which were not introduced below. Because those documents are not properly before us, we cannot consider their merits. *See In re Estate of Brockerman*, 332 Pa.Super. 88, 94, 480 A.2d 1199, 1202 (1984).

determined by the Court that it was only a preliminary hearing, fact-finding hearing, based on just a little bit of the record or testimony that had been given so far and it would only last for about fifteen minutes and it was to decide what direction this case should go in. So I managed to get most of the materials to him by that time and he said that—he told me later on when we would have a full hearing on the matter, but that was just a preliminary hearing and then in September [1987] when all of a sudden they handed down a decision and I specifically asked my attorney why wasn't I present, and he said, well, they do things like this.

N.T. November 16, 1987 at 11. It thus appears that after holding a series of hearings, some without notice to appellee, *id.*, the West German Court awarded sole custody of Henry John to appellant on September 8 or 9, 1987. *Id.* at 13. Appellee has appealed the West German custody decree. *See id.* at 9; Exhibit 4.

### I.

Appellant first contends that the custody order that had been entered on October 9, 1985, by the Court of Common Pleas of Philadelphia County later was modified by an order of a West German Court, dated September 9, 1987. According to appellant, the West German order, *inter alia*, has divested Pennsylvania courts of the authority to hold appellant in contempt.[5] We disagree.

### A.

 In Pennsylvania, jurisdiction of custody matters is governed by the Uniform Child Custody Jurisdiction Act (UCCJA), codified at 42 Pa.C.S.A. §§ 5341–66. The manifold purposes of the UCCJA, as embodied in section 5342(a)(1)–(8), include avoidance of jurisdictional conflicts;

---

5. Appellant also attacks the validity of previously entered orders on the ground that the courts failed to make specific factual findings and provide detailed reasons for their conclusions. Because appellant failed to timely appeal from those orders, she has waived these claims. *See* Pa.R.A.P. 903.

promotion of cooperation between "interested" jurisdictions; assurance of custody litigation in the forum having the greatest nexus with the case; and deterrence of abductions. *See id.* § 5342; *M.D. v. B.D.*, 336 Pa.Super. 298, 302, 485 A.2d 813, 815 (1984); *Commonwealth ex rel. Earl R.D. v. Linda H.S.*, 297 Pa.Super. 78, 88, 443 A.2d 307, 311 (1982); *see also Commonwealth ex. rel. Octaviano v. Dombrowski*, 290 Pa.Super. 322, 327–28, 434 A.2d 774, 777 (1981); *Commonwealth ex rel. Zaubi v. Zaubi*, 275 Pa.Super. 294, 300, 418 A.2d 729, 733, *aff'd*, 492, Pa. 183, 423 A.2d 333 (1980).

> The list contains overlaps, [but] the important features boil down to a conviction that *the instability that results from child-snatching and forum-shopping is harmful to children, and that the court system should not condone the unilateral decision of one parent in helping himself or herself by attaining the physical possession of the child and seeking the forum most likely to award permanent custody to that parent.*

*Warman v. Warman*, 294 Pa.Super. 285, 294, 439 A.2d 1203, 1208 (1982) (plurality) (emphasis in original). Any parent who abducts his or her child and goes forum shopping, therefore, has a heavy burden to overcome in proving that the court issuing the original decree was not acting in the child's best interest. *Zaubi*, 275 Pa.Super. at 300, 418 A.2d at 732. The text of the statute itself indicates, and our courts have held, that its provisions apply not only interstate, *id.* §§ 5342, 5347, but also intrastate, *id.* § 5364, and internationally, *id.* § 5365. *See, e.g., Hattoum v. Hattoum*, 295 Pa.Super. 169, 174, 441 A.2d 403, 405 (1982); *Warman*, 294 Pa.Super. at 292, 439 A.2d at 1207 (1982); *Zaubi*, 275 Pa.Super. at 299, 418 A.2d at 731. The Act is not a " 'reciprocal' law and is in full operation in each state regardless of its enactment in other states." *Warman*, 294 Pa.Super. at 293, 439 A.2d at 1207.

Although we have not previously elucidated the analysis for determining whether to exercise subject matter jurisdiction in a situation involving a potential conflict of jurisdic-

tions, our courts have engaged in a two-pronged balancing test. *See, e.g., Scheafnocker v. Scheafnocker,* 356 Pa.Super. 118, 514 A.2d 172 (1986); *Grun v. Grun,* 344 Pa.Super. 432, 496 A.2d 1183 (1985), *aff'd per curiam,* 511 Pa. 374, 514 A.2d 1372 (1986); *M.D. v. B.D.,* 336 Pa.Super. 298, 485 A.2d 813; *Carpenter v. Carpenter,* 326 Pa.Super. 570, 474 A.2d 1124 (1984); *Earl R.D.,* 297 Pa.Super. 78, 443 A.2d 307; *Octaviano,* 290 Pa.Super. 322, 434 A.2d 774; 1 J. McCahey, M.M. Kaufman, C. Kraut & J. Zett, *Child Custody & Visitation, Law & Practice* § 4.01[4] at 4–26 (1988) (hereinafter *"Child Custody "*). Naturally, the first prong requires an ascertainment of the basis for our jurisdiction. *See* 42 Pa.C.S.A. § 5344. The UCCJA provides the standard for determining whether the necessary predicate for jurisdiction exists. 1 *Child Custody* § 4.01[4] at 4–26. If jurisdiction is properly laid in Pennsylvania, we then proceed to the second prong, which focuses on the restrictions on the exercise of our authority. This second step is necessitated by the legislative policy of circumscribing jurisdiction in custody cases rather than proliferating it. *See Hattoum,* 295 Pa.Super. at 175, 441 A.2d at 406; *Warman* 294 Pa.Super. at 301, 439 A.2d at 1211. With respect to this latter prong, we must determine the basis for the jurisdiction of the competing forum, the priority in time in which the actions were filed, and the applicability of equitable doctrines, such as unclean hands. *See* 1 *Child Custody* at 4–26 to –27.

Under the UCCJA, subject matter jurisdiction may be premised on three major grounds, "home state," significant connections, or parens patriae, as follows:

§ 5344. Jurisdiction

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the *home state* of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth.

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child;

(3) the child is physically present in this Commonwealth and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) Physical presence insufficient.—Except under subsection (a)(3) and (4), physical presence in this Common-

wealth of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this Commonwealth to make a child custody determination.

(c) Physical presence unnecessary.—Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

42 Pa.C.S.A. § 5344.

Importantly, jurisdiction premised on the ground that the forum is the "home state" of the child, 42 Pa.C.S.A. § 5344(a)(1), predominates over jurisdiction premised on other grounds, such as significant contacts, *see id.* § 5344(a)(2). *See Hattoum v. Hattoum,* 295 Pa.Super. at 175, 441 A.2d at 405 (1982) (UCCJA treats home jurisdiction preferably under § 5344(a)(1)). This is especially true where a parent has resorted to self-help before approaching the court, and consequently, refusal of the trial judge to exercise jurisdiction under section 5344(a)(2) would be proper. *See Melzer v. Witsberger,* 299 Pa.Super. 153, 445 A.2d 499, 503–04 (1982). "For this Court to hold otherwise would allow parties to custody proceedings to defeat jurisdiction by the simple expedient of removing the child to another state." *Octaviano,* 290 Pa.Super. at 328, 434 A.2d at 777; *see also* 42 Pa.C.S.A. § 5344(b). The term "home state" has been statutorily defined as follows:

The state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

42 Pa.C.S.A. § 5343.

With respect to international custody disputes, the Act provides,

The general policies of this subchapter extend to the international area. The provisions of this subchapter relating to the recognition and enforcement of custody

decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

42 Pa.C.S.A. § 5365. Although section 5344, outlining the jurisdictional bases, applies to the states, it does not apply to other countries according to the drafters of the model Act:

Not all the provisions of the Act lend themselves to direct application in international custody disputes; but the basic principles of avoiding jurisdictional conflict and multiple litigation are as strong if not stronger when children are moved back and forth from one country to another by fueding relatives.

. . . . .

The second sentence [of section 5346] declares that custody decrees rendered in other nations by appropriate authorities (which may be judicial or administrative tribunals) are recognized and enforced in this country. *The only prerequisite is that reasonable notice and an opportunity to be heard was given to the persons affected. It is also to be understood that the foreign tribunal had jurisdiction under its own law rather than under section 3 [42 Pa.C.S.A. § 5433] of this Act.*

4 *Child Custody* § 32.03[1][b] at 32-65 to -66 (quoting Uniform Child Custody Jurisdiction Act § 1 commentary) (citations omitted) (emphasis added); *see also Hovav v. Hovav*, 312 Pa.Super. 305, 458 A.2d 972 (1983) (Pennsylvania court properly declined jurisdiction where proceedings ongoing in Israel of which petitioner had notice).

The Act recognizes two situations, one mandatory and one permissive, in which jurisdiction might be declined. In the first, a court must abstain because another forum has jurisdictional priority. Priority arises under the "first in time rule":

A court of this Commonwealth *shall not* exercise its jurisdiction under this subchapter if at the time of filing

the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this Commonwealth is a more appropriate forum or for other reasons.

42 Pa.C.S.A. § 5347 (emphasis added); *see also Scheafnocker v. Scheafnocker*, 356 Pa.Super. at 128–30, 514 A.2d at 178. An action is pending from its commencement to its final determination upon appeal, or until the time for appeal has expired. *Levinson ex rel. Levinson v. Levinson*, 354 Pa.Super. 407, 412–13, 512 A.2d 14, 17 (1986). Because " 'the policy against simultaneous custody proceedings is so strong' ... courts should refrain from exercising jurisdiction to further the purposes of the Act.' " *Id.* Consequently, as long as one forum is exercising jurisdiction, there is no concurrent jurisdiction to modify a decree. *Id.; see also* 42 Pa.C.S.A. § 5355 ("a court of this Commonwealth shall not modify that decree unless: (1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under the jurisdictional prerequisites substantially in accordance with this subchapter or has declined to assume jurisdiction to modify the decree; and (2) the court of this Commonwealth has jurisdiction"). Importantly, the first in time rule applies to international custody disputes. *See* 4 *Child Custody* § 32.03[1][b] at 32–65 to –66. We finally note that this provision is symmetrical, that is we have both declined, *see Grun*, 344 Pa.Super. 432, 496 A.2d 1183 (court below erred in failing to stay proceedings after discovering that case was pending in Texas); *Carpenter*, 326 Pa.Super. 570, 474 A.2d 1124 (court below properly stayed proceedings where case was pending in Massachusetts), and exercised jurisdiction pursuant to it, *see Scheafnocker*, 356 Pa.Super. at 128–30, 514 A.2d at 176–78 (where Pennsylvania action filed first, court did not have to decline its jurisdiction predicated on significant connection even though Texas technically was the home jurisdiction).

The key distinction between the above-mentioned mandatory declination provision, 42 Pa.C.S.A. § 5347, and section 5348, which is permissive, is that no other forum is exercising jurisdiction. Thus, if two forums have colorable bases for exercising jurisdiction, a court is permitted to decline "its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case" and that another court is a "more appropriate forum." *Id.* § 5348; *see, e.g., Aldridge v. Aldridge*, 326 Pa.Super. 49, 473 A.2d 602 (1984) (case properly transferred to Kentucky where that state had "significant connection" to facts and Pennsylvania had no significant contacts); *Earl R.D.*, 297 Pa.Super. 78, 443 A.2d 307 (court properly abstained where Vermont was "home state"); *cf. Hattoum*, 295 Pa.Super. at 176–77, 441 A.2d at 406–08 (Pennsylvania court properly exercised jurisdiction where both Pennsylvania and Argentina have colorable reason to exercise jurisdiction).[6] Like section 5347, section 5348 is applicable to custody battles crossing international boundaries. *See* 4 *Child Custody* § 32.-03[1][b] at 32–65 to –66.

"Abductions and reabductions of children remains perhaps the most serious problem confronting practitioners and the courts, not to mention the child, the innocent victims of the ongoing struggle between embattled and

---

**6.** The UCCJA provides guidance to a court with respect to declining to exercise its jurisdiction:

**(c) Factors to be considered.**—In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the home of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training, and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5242 (relating to purposes and construction of subchapter).

*Id.* § 5348(c).

embittered parents." 4 *Child Custody* § 4.08[1] at 4–150. With this concern in mind, our legislature has provided another ground on which a court may abstain: if the petitioner has "wrongfully taken the child from another state or has engaged in conduct intending to benefit his position in a custody hearing." 42 Pa.C.S.A. § 5349(a). Additionally, we note that this provision clearly reflects one of the oldest doctrines of equity, i.e., "unclean hands." 4 *Child Custody* § 4.08[2]. Based on section 5349, we have both declined jurisdiction, *see Beese v. Calehuff,* 356 Pa.Super. 137, 514 A.2d 182 (1986), *allocatur denied,* 514 Pa. 641, 523 A.2d 1130 (1987); *Friedenberger v. Friedenberger,* 335 Pa.Super. 622, 485 A.2d 68 (1984), and exercised it, *see M.D. v. B.D.,* 336 Pa.Super. 298, 485 A.2d 813. According to the UCCJA's commentators, the foregoing provision also is applicable to international custody disputes. 4 *Child Custody* § 32.03[1][b] at 32–65 to –66.

■ Turning to the first prong in our analysis, it is abundantly clear that the Pennsylvania courts had jurisdiction at the inception of the custody proceedings in this case. Because the Goodmans and Henry John had continuously lived in the Commonwealth from the latter's birth to the time of the commencement of the proceedings, the Commonwealth unequestionably qualified as the "home state" of the child under the UCCJA. *See* 42 Pa.C.S.A. §§ 5343, 5344. Upon the filing of the action by appellant on May 29, 1981, the Philadelphia Court, therefore, could exercise its subject matter jurisdiction to make a custody determination in this case. *See id* § 5344(a)(1).

■ We now turn to the potential limitations on the exercise of our jurisdiction. Because this conflict of jurisdictions involves a court located in a foreign nation, we do not evaluate whether its assumption of jurisdiction was predicated on one of the grounds enumerated in the Act. *See* 4 *Child Custody* § 3203[1][b] at 32–65 to –66. We instead assume that the West German court properly based its jurisdiction on its domestic law. *Id.* Our recognition of orders emanating from a foreign forum, however, is not

unqualified: It is an absolute prerequisite that all of the affected parties had notice of and had an opportunity to be heard in the foreign proceedings. *Id.* On the present record, it appears that appellee was not accorded these fundamental due process rights, as he testified at the November 16, 1987 contempt hearing in Erie. N.T. November 16, 1987 at 11. On this basis alone, we are not bound to recognize the West German orders. *See* 42 Pa.C.S.A. § 5365; 4 *Child Custody,* § 32.03[1][b] at 32–65 to –66; *cf. Hovav,* 312 Pa.Super. 305, 458 A.2d 972 (Pennsylvania court properly abstained where petitioner had notice of ongoing proceedings in Israel).

■ Additionally, even before appellant left this country she, having full knowledge of the stateside proceedings, petitioned the German courts for permission to "allow her and her child to go [there]." N.T. November 16, 1987 at 18. Furthermore, appellant flew to West Germany a mere two days after the May 13, 1985 hearing in Philadelphia at which she was present, assured the court that she would attend future hearings, provided the court with a Maryland address, and indicated that she would comply with the then-temporary custody decree. N.T. May 13, 1985 *passim;* Brief for Appellant at 6. The West German proceedings clearly were instituted while this Commonwealth was actively exercising its jurisdiction. Under our "first in time rule," 42 Pa.C.S.A. § 5347, the German court should have abstained, 4 *Child Custody* § 32.03[1][b] at 32–65 to –66, as we would have had the situation been reversed, *see Hovav,* 312 Pa.Super. 305, 458 A.2d 972. Under this same rule, we may disregard the orders from a forum that should have declined to exercise its jurisdiction. *See Scheafnocker,* 356 Pa.Super. at 128–30, 514 A.2d at 176–78.

Finally, after reviewing the published cases, we take note that the case *sub judice* is among the most egregious examples of forum shopping. The record in this case speaks for itself: appellant was intimately aware of the ongoing proceedings in this Commonwealth, yet she chose to disregard the orders of the courts below and seek refuge

in West Germany, hoping to hide behind the robes of the West German judiciary. On previous occasions we have condemned forum shopping in custody matters, and in this case, we reaffirm our condemnation of that odious conduct. *See, e.g., M.D. v. B.D.,* 336 Pa.Super. 298, 485 A.2d 813; *Octaviano,* 290 Pa.Super. 322, 434 A.2d 774; *Zaubi,* 275 Pa.Super. 294, 418 A.2d 729. Accordingly, for the foregoing reasons, we conclude that the court below did not err in refusing to acknowledge the orders of the West German court.

### B.

Courts possess " 'the inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with said orders.' " *Schnabel Assoc. v. Building & Construction Trades Council,* 338 Pa.Super. 376, 385, 487 A.2d 1327, 1332 (1985) (quoting *Rouse Philadelphia Inc. v. Ad Hoc '78,* 274 Pa.Super. 54, 71, 417 A.2d 1248, 1257 (1979)). This constitutionally derived power, *see Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 411, 470 A.2d 981, 985 (1984), is the basis for the sanction of contempt. *See Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 438, 323 A.2d 766, 772 (1974). In addition to this inherent power, our courts have statutory contempt power for disobedience of custody orders. *See* Pa.R.Civ.P. 1915.-12. In the context of contempt proceedings for the violation of a custody decree, we have distinguished between enforcement and modification jurisdiction. In *Commonwealth ex rel. Taylor v. Taylor,* 332 Pa.Super. 67, 480 A.2d 1188 (1984), we determined that the court below could properly hold a party in contempt even though it no longer had jurisdiction to modify the underlying custody decree:

> [T]here is a great difference between modification jurisdiction which involves holding an evidentiary hearing on the best interests of the child in order to determine custody, and enforcement jurisdiction, which is limited to determining whether the prior custody order can be en-

forced, *i.e.*, whether the decree was valid when entered and never modified. *Id.*, 332 Pa.Superior Ct. at 72, 480 A.2d at 1190–91. *Taylor*, most significantly, stands for the proposition that so long as a custody decree has not been modified by an order issued by another forum, in a valid exercise of its jurisdiction, it is enforceable by the original forum. *Id.*

■ In this case, we already have determined that under the UCCJA, Pennsylvania is the home state and has continuously exercised its jurisdiction and that the West German orders have no legal effect on the orders below. *See id.* For the foregoing reasons, we now conclude that the Erie Court could enforce by means of its contempt power, *see* Pa.R.Civ.P. 1915.12, the custody order of October 9, 1985, which was validly entered and in effect never modified. *See id. Taylor*, 332 Pa.Super. at 72, 480 A.2d at 1190–91.

II.

■ Appellant's second contention is that "[t]he court of Common Pleas of Erie County, Pennsylvania lacked jurisdiction to enforce the order of the Court of Common Pleas of Philadelphia County and to adjudicate the petition for contempt." Appellant's argument following her statement of the issue is unclear, but we believe that she is challenging both in personam jurisdiction and venue of the Erie Court. These claims are waived.

■ Although an objection to subject matter jurisdiction may be raised at any time during a judicial proceeding, "[q]uestions of personal jurisdiction, venue and notice which relate to the 'method by which a court having the power to adjudicate the matter first obtained superintendence of the cause of action ...,' must be raised at the first reasonable opportunity or they are waived." *Commonwealth ex rel. Schwarz v. Schwarz*, 252 Pa.Super. 95, 99, 380 A.2d 1299, 1301 (1977), *(allocatur denied)* (quoting *Collier Twp. v. Robinson Twp.*, 25 Pa.Commw. 227, 230, 360 A.2d 839, 840 (1976)); *see also Kessler v. Cardonick*, 229 Pa.Super. 97, 323 A.2d 378 (1974) (in personam jurisdiction); *Hohlstein v.*

*Hohlstein,* 223 Pa.Super. 348, 296 A.2d 886 (1972) (venue). Under the rules promulgated by our Supreme Court for custody actions, Pa.R.Civ.P. 1915.1 to 1915.25, "[a] party must raise any question of jurisdiction of the person or venue by preliminary objection filed within twenty days of the service of the pleading to which objection is made or at the time of the hearing, whichever first occurs." Pa.R. Civ.P. 1915.5. Although the custody rules contain no provision defining "pleading," our rules of civil procedure state that "pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counter-claim contains new matter, a preliminary objection and an answer thereto." Pa.R.Civ.P. 1017.

The present action was initiated by a petition for contempt, which is not a pleading and to which preliminary objections consequently are unnecessary. Pa.R.Civ.P. 1915.12(c), 1017. Hence, the first opportunity for appellant to raise her claim, was at the November 16, 1987 contempt hearing. No objection to personal jurisdiction or venue was raised at that time.[7] *See Schwarz,* 252 Pa.Super. at 99, 380

---

7. During the cross-examination of appellee by appellant's counsel the following exchange transpired:

> THE COURT: Rosenberg has Contempt Orders and Bench Warrants. She doesn't want to land in Philadelphia or maybe anywhere in Pennsylvania. Very surely it's going to be uncomfortable for her to be in Erie, Pennsylvania. She has not attempted whatsoever to address this issue here in the United States. Yet, taking this before the German Jurisdiction, again, I can't help but think that it's an effort—when you get an unfavorable answer in one jurisdiction, you go to another jurisdiction and you get then to try and do what you want. She's got what she wants out of the German Court apparently so she's not going to try and listen to us whatsoever.
>
> MR. ORTON (counsel for Appellant): Well, your Honor, I would submit that's rightly so. She went to the proper jurisdiction. She went to where she is located at, where the child is located. I submit the jurisdictional question is squarely dealt with under our act and it says that the Court can entertain jurisdiction. I grant you—
>
> THE COURT: But I would not.
>
> MR. ORTON: Well, I might not either, but that's not for us to decide. That's for the Court before whom the proper jurisdiction is placed to decide.
>
> THE COURT: I think it's up to me to decide when, in fact, you're asking me to look at a foreign order, the Foreign Court and follow

A.2d at 1301. Accordingly, we cannot reach the merits of appellant's claims because they have not been preserved for our review.

## III.

Appellant finally contends that the Erie Court abused its discretion by holding her in contempt. Contempts are subsumed under two categories, civil and criminal, the latter one being further subdivided into direct and indirect contempts. *See Brocker v. Brocker,* 429 Pa. 513, 591, 241 A.2d 336, 338 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969); *Bruzzi v. Bruzzi,* 332 Pa.Super. 346, 352, 481 A.2d 648, 651 (1984). Civil and criminal contempts are distinguished on the basis of the "dominant purpose of the judicial response to contumacious behavior," rather than on the basis of the conduct of the contemnor, *Fatemi v. Fatemi,* 371 Pa.Super. 101, 111, 537 A.2d 840, 845 (1988), largely because the same conduct can give rise to either type of contempt. *See Brocker,* 429 Pa. at 519, 241 A.2d at 339. In short,

> [i]f the dominant purpose [of the court] is to prospectively coerce the contemnor with an order of the court, the adjudication is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication is criminal.

*Commonwealth v. Marcone,* 487 Pa. 572, 578, 410 A.2d 759, 762 (1980) (quoting *In re Martorano,* 464 Pa. 66, 77–78, 346

their ruling. If they would do things in their jurisdiction which I would not do and would be appalled at doing, I cannot then accept their order. I think the act provides for that.
N.T. November 16, 1987 at 17–18.
At first blush this exchange is ambiguous as to whether subject matter or personal jurisdiction is being debated. Assuming arguendo that counsel is referring to the latter variety, his mere assertion that another forum has in personum jurisdiction does not by implication mean that our courts lack same. We conclude, therefore, that counsel's statements do not constitute an adequate objection to the exercise of personal jurisdiction by our courts.

A.2d 22, 27–28 (1975)). "Descriptively, the feature which distinguishes the two types of contempt is that a civil contempt order, because of its coercive nature, will necessarily have a condition upon which the contemnor may purge himself. This is the proverbial 'key to the jailhouse door.' " *Bruzzi*, 332 Pa.Super. 353, 481 A.2d at 652.

■ A party must have violated a court order to be punished for civil contempt. *Woods v. Peckich*, 463 Pa. 274, 280, 344 A.2d 828, 832 (1975). Because the dominant purpose of civil contempt proceedings is to aid a private litigant " 'by coercing the contemnor into compliance with a court order,' " *Commonwealth ex rel. Ermel v. Ermel*, 322 Pa. Super. 400, 403, 469 A.2d 682, 683 (1983) (quoting *In re Grand Jury*, 251 Pa.Super. 43, 53, 379 A.2d 323, 327 (1977)), the general rule is that the aggrieved party "has the burden of proving non-compliance with ... [that] order by a preponderance of the evidence." *Laughlin v. Laughlin*, 372 Pa.Super. 24, 26, 538 A.2d 927, 928 (1988); *see also Barrett v. Barrett*, 470 Pa. 253, 263, 368 A.2d 616, 621 (1977). Finally, in reviewing an adjudication of contempt, this Court places great reliance on the sound discretion of the trial judge, *Laughlin*, 372 Pa.Super. at 26–27, 538 A.2d at 928.

It is axiomatic that an appellate court's scope of review in equity matters is very narrow. The trial court's findings will not be disturbed absent a clear error of law or abuse of discretion. Each court is the exclusive judge of contempts against its process, and on appeal its action will be reversed only when a plain abuse of discretion occurs.

*Neshaminy Water Resources Auth. v. Del–Aware Unltd.*, 332 Pa.Super. 461, 469, 481 A.2d 879, 883 (1984) (citations omitted).

■ Here, the court below did not indicate whether it was holding appellant in criminal or civil contempt, and plainly, the facts in this case could have given rise to either type. *See Fatemi*, 371 Pa.Super. at 112, 537 A.2d at 845. Our review of the proceedings, however, reveals that the

dominant purpose of the Erie Court's contempt order was to compel appellant into complying with the custody decree and releasing Henry John to appellee. *See Marcone,* 487 Pa. at 578, 410 A.2d at 762; *Hopkinson,* 323 Pa.Super. at 411, 470 A.2d at 985. Hence, we find that appellant was held in civil contempt. After reviewing the parties' briefs, record, and lower court opinion, we conclude that the court below did not abuse its discretion in determining that appellee sustained his burden of proof.[8] *See Laughlin,* 372 Pa.Super. at 26, 538 A.2d at 928. Thus, for the reasons stated in the lower court opinion, we affirm the order below holding appellant in civil contempt.

Accordingly, for the foregoing reasons, we affirm the order below.

Order affirmed.

JOHNSON, J., concurs in the result.

**8.** In her brief appellant specifically contests the award of counsel fees to appellee. Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order. *See Brocker v. Brocker,* 429 Pa. 513, 519–20, 241 A.2d 336, 338–39 (1968). Because an award of counsel fees "is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent," *American Mut. Liability Ins. Co. v. Zion & Klein, P.A.,* 339 Pa.Super. 475, 480, 489 A.2d 259, 262 (1985), it is "coercive and compensatory, and not punitive." *See Schnabel Assoc.,* 338 Pa.Super. at 397, 487 A.2d at 1338. Thus, counsel fees are a proper element of a civil contempt order. *Id.* In reviewing a grant of attorney's fees, we will not disturb the decision below absent a clear abuse of discretion. *See, e.g., Brenckle v. Arblaster,* 320 Pa.Super. 87, 94, 466 A.2d 1075, 1078 (1983); *Shearer v. Moore,* 277 Pa.Super. 70, 78, 419 A.2d 665, 669 (1980). Here, we have reviewed the proceedings below and conclude that the Erie Court did not clearly abuse its discretion in awarding attorneys fees to appellee, and we, therefore, will not disturb its determination.