J-A21037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.L.L., a/k/a T.L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| R.F.P., | : | |
| | : | |
| Appellant | : | No. 285 EDA 2016 |

Appeal from the Order December 23, 2015
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): 0C1000744

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED FEBRUARY 14, 2017**

R.F.P. ("Father"), *pro se*,[1] appeals from the Order granting (1) in part, the Petition, filed by T.L.L. a/k/a T.L.P. ("Mother"), seeking to modify custody of R.P.P. ("R.P."), born in March of 2005; and (2) one of Mother's contempt Petitions against Father, and directing him to pay $500 in attorney's fees to Mother's counsel.[2]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history of this case, which we adopt for the purpose of this appeal.  *See* Trial Court Opinion, 2/19/16, at 1-3.

---

[1] Father is an attorney, licensed to practice law in the Commonwealth of Pennsylvania.

[2] The parties have two other children who have been involved in these custody proceedings: S.P. (born in May of 2006); and E.P. (born in June of 2008) (all three children will collectively be referred to as "Children").

The trial court entered the Order ruling on Mother's custody modification and contempt Petitions on December 23, 2015. On January 19, 2016, Father timely filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

On appeal, Father raises the following issues for our review:

I. Whether the judge erroneously denied recusal where she has demonstrated an unwavering pattern of bias favoring the abusive, suicidal [Mother], including (1) purposefully making hearsay "errors" to [Mother's] advantage[;] (2) treating [C]hildren as a party[;] and (3) refusing to acknowledge Father's contempt allegations against [Mother], thus adversely affecting the best interests of [C]hildren?

II. Whether the [trial] judge impermissibly relied on her own personal beliefs with respect to parental communication and, in so doing (1) expressly refused to follow this court's binding standard of "minimum of communication" between custodial parties[;] and (2) prevented Father from introducing and ignored relevant and undisputed evidence of [Mother's] physical abuse of [Father]?

III. Whether the [trial] judge's singular finding of contempt was pretextual because it[] (1) was not only unsupported by the

---

[3] Father has attached to his brief a Supplemental Concise Statement. However, our review discloses no request for, or order granting, leave to file a supplemental concise statement. Nor is there any entry on the docket indicating that such document was ever filed with the trial court. Therefore, we decline to address any issue raised in that document. *See Korman Commercial Props. v. Furniture.com, LLC*, 81 A.3d 97, 102 (Pa. Super. 2013) (deeming as waived an issue that was not raised and preserved properly before the lower court in the concise statement); *see also* Pa.R.A.P. 1925(a)(2)(i) (requiring that the appellant in a Children's Fast Track case to file the concise statement *contemporaneously* with the notice of appeal, so that the trial court will respond to the issues raised, and this Court can conduct proper appellate review).

record[;] but (2) contradicted by [Mother's] own testimony[;] and (3) separated [C]hildren without justification?

IV. Whether the court erred in ordering Father to pay [Mother's] counsel $500.00 in attorney's fees?

Father's Brief at 3.

In his first issue, Father contends that the trial judge, the Honorable Holly J. Ford ("Judge Ford"), erred by denying his recusal Petition because she demonstrated bias in favor of Mother by "(1) purposefully defying the rules of hearsay in [Mother's] favor[;] (2) treating [C]hildren as a party[;] and (3) refusing to litigate Father's filed counterclaims of contempt against [Mother]." *Id*. at 16. Father asserts that, at the hearings conducted on May 17, 2013, and June 4, 2015, the trial court admitted emails, sent from Mother to Father, wherein Mother purported to paraphrase statements made by Children. *Id*. at 25. According to Father, Judge Ford stated, "I will allow it as an exception to hearsay, because I consider [C]hildren a party. Not everybody does that; I do." *Id*. (citing N.T., 5/17/13, at 19) (emphasis omitted). Father claims that Judge Ford erred by admitting the emails because children are not parties to contempt or custody proceedings. Brief for Appellant at 25.

Father also argues that he filed counter-claims of contempt against Mother, and that the trial court refused to consider such claims "because, she speculated, Father had not 'paid' any money for the filings …." *Id*. at 31. Father insists that he filed the contempt complaints, and that the trial

court's statements otherwise are false, and demonstrate her bias toward him. ***Id***. at 31-32.[4]

In its Opinion, the trial court addressed Father's first issue, set forth the relevant law, and determined that the issue lacks merit. ***See*** Trial Court Opinion, 2/19/16, at 4-9. We agree with the reasoning of the trial court, which is supported by the record and free of legal error, and affirm on this basis as to Father's first issue. ***See id***.

In his second issue, Father contends that Judge Ford "impermissibly relied on her own personal beliefs regarding parental communication" and ordered "excessive contact and [an] unreasonable standard of conduct" between the parties. Father's Brief at 36-37, 46, 49. Father asserts that shared custody requires only that custodial parents maintain a minimal degree of communication. ***Id***. Father claims that Judge Ford "explicitly refused to follow this Court's binding standard and replaced it with an impossible standard." ***Id***. at 50. Father argues that Judge Ford

> modified the custody Order to require Father to (1) inform [Mother] ahead of time[,] in writing[,] of any physician or dentist appointments …; (2) respond within 96 hours to [Mother's] emails …; and (3) ignored this Court's "minimal cooperation"

---

[4] In his brief, Father cites additional claims of error and bias by the trial judge. ***See*** Father's Brief at 31, 32-35. However, as related to Father's first issue, the only claims preserved for our review are that the trial court "(1) purposefully ma[de] hearsay 'errors' to [Mother's] advantage; treat[ed] C]hildren as a party; and (3) refus[ed] to acknowledge Father's contempt allegations against [Mother] …." ***See id***. at 3; ***see also*** Pa.R.A.P 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); ***Korman***, ***supra***. (deeming as waived any issue not raised in the concise statement).

standard in favor of a higher, "full" cooperation standard that no custodial party could possibly achieve …, thus more easily exposing Father to more serial contempt petitions and a lower burden of proof for Mother.

*Id*. at 50-51.[5] Father contends that "[t]he law does not require [him] to be amicable – or even civil – to [Mother]." *Id*. at 52. Father asserts that Judge Ford "improperly modified the custody [O]rder to require an illegal, heightened standard of interaction between the parties …." *Id*. at 52.[6]

In its Opinion, the trial court addressed Father's second issue, set forth the relevant law, and determined that the issue lacks merit. *See* Trial Court Opinion, 2/19/16, at 18-19 (explaining that the communication requirements included in the custody Order were necessary to prevent Children from being exposed to "unnecessary, duplicative medical appointments; frustration from conflicting extracurricular activities, and/or [the] burden [of] unnecessary, duplicative work on school projects."). We

---

[5] Contrary to Father's characterization, our review of the custody Order discloses that it requires *both* parties to (1) inform each other ahead of time, in writing, of any physician or dentist appointments; (2) respond within 96 hours of a request by the other party to enroll Children in activities; and (3) to "strive" for "full co-parenting skills." Custody Order, 12/22/15, at 3.

[6] Father also attempts to argue that the trial judge improperly determined that Father's evidence of Mother's behavior was "not relevant to the issue of how Father must deal with [] abusive[,] overly-litigious and querulous [Mother]," and erred by refusing to let Father testify as to Mother's "heinous acts of physical abuse." Father's Brief at 37-46. However, Father failed to raise this issue in his Concise Statement. Consequently, it was not addressed by the trial court in its Pa.R.A.P. 1925(a) Opinion. Although Father purported to raise this issue in his Supplemental Concise Statement, for the reasons stated previously we decline to address any issue raised in that document.

agree with the reasoning of the trial court, which is supported by the record and free of legal error, and affirm on this basis as to Father's second issue. *See id*.

As the first two parts of Father's third issue and his fourth issue are related, we will address them together. In the first two parts of his third issue, Father contends that "the [trial] judge's singular finding of contempt was pretextual, used only to severely punish Father because the judge harbors personal animosity against him." Father's Brief at 54. Father asserts that the finding was unsupported by the record and contradicted by Mother's testimony that the underlying custody mix-up was an honest mistake by Father. *Id*. Father claims that the custody Order under which the parties were operating included an "unusual and complicated multi-day custody exchange for Christmas and New Year['s Day,]" which "drastically departed from the usual week-to-week custody arrangement." *Id*. at 55. Father argues that the trial court ignored his testimony that he returned Children late over the Christmas holiday because he misread the holiday custody arrangement. *Id*. at 56. Father contends that there was no evidence of wrongful intent, and that the trial court's contempt ruling was merely a pretext to punish Father. *Id*. at 59.

In his fourth issue, Father contends that the trial court erred in ordering him to pay $500 in attorney's fees to Mother's counsel. Father's Brief at 65. Father asserts that, pursuant to the Child Custody Act (the

"Act"), 23 Pa.C.S.A. §§ 5321-5340, a court may not award counsel fees, costs or expenses to a party unless it finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith. *Id*. at 65 (citing 23 Pa.C.S.A. § 5339). Father claims that the conduct which formed the basis of the fee award was a "one-time mistake regarding a confusing custody schedule change." *Id*. at 66. Father argues that Mother's conduct, and not his, was obdurate, vexatious, and in bad faith. *Id*. Father contends that the only basis for the fee award is the trial judge's "personal ill-feelings" toward Father, and her "sympathetic or emotional identification with [Mother]." *Id*. at 71.

In its Opinion, the trial court addressed the first two parts of Father's third issue and his fourth issue, set forth the relevant law, and determined that the issues lack merit. *See* Trial Court Opinion, 2/19/16, at 19-23. We agree with the reasoning of the trial court, which is supported by the record and free of legal error, and affirm on this basis as to the first two parts of Father's third issue and his fourth issue. *See id*.

In the final part of his third issue, Father contends that the trial court erred by reducing his custodial time with R.P. by one full day per week. Father's Brief at 60. Father asserts that the trial judge found him in contempt as a pretext to punish him "simply because she personally dislikes him." *Id*. Father points to the trial court's stated basis for the change, *i.e.*, to permit Mother to take R.P. to counseling on Fridays, and claims that there

- 7 -

was no need to remove R.P. from Father's custody on Thursday nights. *Id*.

Father also argues that he could take R.P. to counseling on Fridays. *Id*.

Father contends that the reduction of his custodial time with R.P. was not

justifiable. *Id*. at 63.

In any custody case decided under the Act,[7] the paramount concern is

the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section

5338 of the Act provides that, upon petition, a trial court may modify a

custody order if it serves the best interests of the child. 23 Pa.C.S.A.

§ 5338; *see also E.D. v. M.P.*, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011).

Section 5328(a) sets forth a list of sixteen factors that the trial court must

consider when making a "best interests of the child" analysis for a custody

determination. *See* 23 Pa.C.S.A. § 5328(a). Moreover, section 5323(d)

mandates that, when the trial court awards custody, it "shall delineate the

reasons for its decision on the record in open court or in a written opinion or

order." *Id*. § 5323(d).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall
determine the best interest of the child by considering all
relevant factors, giving weighted consideration to those factors
which affect the safety of the child, including the following:

---

[7] *See* 23 Pa.C.S.A. § 5321 *et seq*. Because the custody trial was held in
2015, the Act applies to this case. *See C.R.F. v. S.E.F.*, 45 A.3d at 445
(holding that, if the custody evidentiary proceeding commences on or after
the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act
apply).

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).[8]

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

---

[8] Effective January 1, 2014, the Act was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1). As this subsection was applicable at the time of the custody trial in the present matter, the trial court considered it when making its modification determination. **See** Trial Court Opinion, 2/19/15, at 11.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*Id*. § 5328(a).

In its Opinion, the trial court addressed the final part of Father's third issue, set forth the relevant law, and determined that the issue lacks merit. *See* Trial Court Opinion, 2/19/16, at 10-18 (wherein the trial court discussed each of the sixteen custody factors set forth in the Act, and determined that the modification was in R.P.'s best interest). We agree with the reasoning of the trial court, which is supported by the record and free of legal error, and affirm on this basis as to the final part of Father's third issue. *See id*.

Order affirmed.

- 10 -

J-A21037-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**DOMESTIC RELATIONS DIVISION**

R.F.P.

~~*[redacted]*~~                                    :        COURT OF COMMON PLEAS.
                        FATHER              :        PHILADELPHIA COUNTY, PA
                                            :
            V                               :        IN CUSTODY: 0C100074-
        T.L.P.                              :
~~*[redacted]*~~                            :
                        MOTHER              :        NO.: 285 EDA 2016


**OPINION**

            R.F.P.
Appellant ~~*[redacted]*~~ (hereafter "Father") appeals from an order dated December 22.
2015 entered by the Honorable Holly J. Ford. After a hearing the trial court granted, in part,
            T.L.P.'s
Appellee ~~*[redacted]*~~ (hereafter "Mother") petition to modify custody. A prior shared

physical custody arrangement was modified to allow Mother to maintain custody of the oldest
            R.P.P.
child, ~~*[redacted]*~~ (hereafter "RPP"), every Thursday evening from 7:00 pm to Friday at

7:00 pm in addition to her shared weekly custody. The mid-week custodial exchange from

custodial parent to non-custodial parent was removed from the custodial order, limiting the

exchange of custody for each child to once a week instead of twice a week. On Mother's two

petitions for contempt against Father the trial court dismissed the first petition after a hearing

without making a finding of contempt. On the second petition the trial court found Father in

contempt of the custody order for his actions concerning Christmas 2014. Father was ordered to

pay five-hundred dollars ($500.00) in attorney fees to Mother's counsel for filing and arguing the

contempt petition.

1

## I.     Procedural History *(See docket)*

Mother filed a petition for contempt on August 13, 2014, and a petition to modify custody along with another petition for contempt on December 29, 2014. The petitions were scheduled for a hearing on January 27, 2015, but continued due to inclement weather that forced the courts to close. Father filed a motion for recusal of the judge on January 22, 2015, which was denied without a hearing on February 6, 2015. A hearing on Mother's three petitions was held on June 4, 2015, but was continued for an additional date, as there was insufficient time to hear the testimony of all the witnesses. On June 16, 2015, Father filed a motion for a protracted hearing on the remainder of the previously continued petitions. The motion was granted on June 19, 2015, and the protracted hearing was held on November 10, 2015. A final Order of court was entered on December 22, 2015. Father filed a petition for reconsideration on December 29, 2015 which was denied by operation of law after passage of thirty days without signature. Father filed this appeal on January 19, 2016.

## II.     Facts

Father and Mother were subject to a custody Order, which was entered by agreement of the parties, on May 17, 2013. That Order granted Father and Mother shared legal custody, and shared physical custody of the parties' three minor children. The Order also gave detailed custodial rights for holidays, and addressed the need for counseling, communication between the parties, and attendance at extracurricular activities. (See Order dated May 17, 2013). On May 31, 2013, Father filed an appeal to the May 17, 2013 Order. (See Docket). In a Decision dated March 7, 2014, the Superior Court affirmed the trial court's Order. (See Non-precedential Decision – See Superior Court I.O.P. 65.37).

2

The Order which forms the subject of this appeal was entered on December 22, 2013. The hearing encompassed two days of testimony; June 4, 2015 and November 10, 2015. Four (4) witnesses testified: Robert Ham, RPP's teacher; Erica Hall, Department of Human Services (hereafter "DHS") social worker: Mother. and Father. The three minor children were interviewed *in camera*. and the testimony was sealed. N.T. November 10. 2015, p. 201, l. 5-8. Father submitted five (5) exhibits, which consisted of email correspondence, report cards, and a letter from Erica Hall. Mother submitted fourteen (14) exhibits, which consisted of email correspondence and letters.

### III. Statement of Errors Complained of on Appeal

1. The court erred in denying Father's recusal petitions.
2. The court erred by treating the children as a party to contempt and custody proceedings
3. The court erred by permitting petitioner-Mother to introduce inadmissible hearsay in the form of her own multiple electronic mail correspondence to respondent as 'evidence" of the truth of the matters asserted in those correspondence.
4. The court erred by ignoring Father's filed claims of contempt against petitioner-Mother.
5. The court erred by altering the long-standing custody schedule where doing so separated the children with no justifiable purpose and where the children were used to and comfortable with the schedule.
6. The court erred by quoting the law of the Commonwealth governing cooperation by custodial parties and explicitly instructing the parties to disobey that law.
7. The court erred by forcing the custodial parties to communicate regularly in direct contravention to the law of the Commonwealth.
8. The court erred by finding Father in contempt of violating the Christmas custody schedule where Father testified that he made an honest mistake for which he apologized to petitioner and attempted to rectify the situation, and petitioner herself testified that she believed Father was "sincere" in the representation.
9. The court erred by again incorrectly rendering the terms of the annual New-Years-Eve-through –January -2nd custody schedule to reflect the opposite of its stated intention at trial.
10. The court erred as a matter of law in imposing attorney's fees on Father.

**Standard of Review**

The standard of review in a child custody matter is abuse of discretion. *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super 2012). Findings of the trial court, which are supported by the record. issues of witness credibility. and weight of the evidence should be deferred to the trial judge. *Id.* The conclusions of the trial judge may be rejected if they involve an error of law. or are unreasonable. *Id.* "the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004).

The standard of review for a finding of contempt in a child custody matter is whether the trial court committed a "clear abuse of discretion." *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013). Deference should be given to the sound discretion of the trial court. *Id.* The contempt power is necessary to preserve the courts authority and the administration of justice. *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001).

## IV. Analysis

### 1. The court erred in denying Father's recusal petitions.

Denial of Father's motion for recusal was proper. A motion for recusal requires a jurist to make a two-pronged analysis. First, the jurist must make an "independent, self-analysis" of his or her ability to maintain impartiality. *Commonwealth v. Druce*, 577 Pa. 581, 589 (2004). Second, the jurist must decide if his or her involvement in the case would create an appearance of impropriety or would undermine public confidence in the judicial system. *Id.* The Pennsylvania Supreme Court presumes judges of the Commonwealth are "honorable, fair and competent," and have the ability to decide if they can rule impartially and without prejudice with regard to a

4

motion for recusal. *Id.* The burden is on the petitioner to present evidence of bias, prejudice or unfairness, which would raise a substantial doubt as to whether the jurist possesses the ability to preside impartially. *Arnold v. Arnold,* 847 A.2d 674, 680 (Pa. Super. 2004). Prior adverse rulings alone will not establish bias sufficient for recusal, particularly when the prior rulings are legally appropriate. *Id.* at 681.

Here, after a review of the Motion for Recusal, this Jurist made the required self-analysis and came to the conclusion that impartiality had been maintained in prior proceedings, and that she had the ability to continue to maintain impartiality in the protracted hearing to address Mother's three filed petitions. Next, after a review of the notes of testimony from the hearing on May 17, 2013, which was the basis for the motion for recusal, this Jurist concluded that her further involvement in this child custody matter would not create the appearance of bias, or undermine public confidence in the judicial system. Father stated, "Father submits that this court has, or appears to have, arrived at a sympathetic or emotional identification with Mother in the instant matter, amounting to prejudgment or an appearance of prejudgment." (See Father's Motion for Recusal at 2). Father cited eighteen (18) reasons to support his belief, all of which arose from the May 17, 2013 hearing. *Id.* at 2-17. However, the May 17, 2013 hearing culminated in an Order, by agreement of parties, and no finding of contempt against Father. (See Order dated May 17, 2013). Father appealed that Order, raising some of the same issues on appeal that he raised in the instant motion for recusal, and the trial court's order was affirmed in a decision dated March 7, 2014. Throughout Father's Motion for Recusal Father cited to fragments of statements from the May 17, 2013 notes of testimony that he felt reflected prejudgment or an appearance of prejudgment. (See Father's Motion for Recusal at 2-17). However, the fragmented statements

5

taken in their entirety and in the context of the hearing do not reflect any prejudgment of Father by this Jurist, bias against Father or sympathy towards the Mother. N.T. May 17, 2013.

**2. The court erred by treating the children as a party to contempt and custody proceedings.**

This court without further specificity from Father, interprets this alleged error as applying to the hearsay objection, which Father made to statements the children made out of court. Father made a partial continuing objection to any and all of these statements during trial, but does not point to any specific error or specific statement on which the court allegedly relied in his 1925(b) statement. The only statement made by the children, which was not corroborated separately by the children in their testimony, or the testimony of the witnesses (including Father) is the following: Mother stated on the record, "the children told me later that he took them to meet his new girlfriend's family." N.T. June 4, 2015, p. 149, l. 17-18. Father objected on hearsay grounds and the court stated, "No, I don't consider it hearsay when they're children, because the children I consider parties in this matter." N. T. June 4, 2015, p. 149, l. 19-22. The court elaborated that the statement would be "bad" for purposes of hearsay, but it is "the only way that I have information through parents about what the children have to say and what I can question them on and interview them on later..." *Id.* at p. 150, l. 1-10.

The codified Pennsylvania Rules of Evidence do not specifically refer to a hearsay exception for children, but Rule 803 (25) permits statements made by an "opposing party" as an exception to the hearsay rule. The trial court has not found case law which specifically addresses statements made by children in custody proceedings. Statements made by an alleged victim in a Protection from Abuse case admitted through the testimony of a case worker and clinical therapist have not been permitted. *K.D. by K.H.D v. J.D.*, 696 A.2d 232, 233 (Pa. Super. 1997). Although children were considered parties for purposes of a termination proceeding (and by

6

reference in criminal and dependency proceedings) their testimony was not allowed as a hearsay exception. *In re M.T.*, 607 A.2d 271, 280-81 (Pa. Super. 1992). The trial court would prefer that this Honorable Court recognize a hearsay exception for children's statements in family court for reasons stated on the record. "its an unusual situation in Family Court. It's one of the only place where people who aren't necessarily heard are directly involved in cases." N.T. June 4, 2015. p 150, l. 12-15. However, this Honorable Court need not acknowledge any such exception in the case at bar. The trial court, in reviewing its custody factors and the best interest of the children, did not rely on any out of court statements made by the children. The children's out of court statements were not offered "for the truth of the matter asserted", but rather for the permissible purpose of "establishing what was in the mind of the children and the impact upon the children of [appellant's] conduct." *Schwarcz v. Schwarcz*, 548 A.2d 556, 562 (Pa. Super. 1988). In the contempt portion of the proceeding it was completely irrelevant if Dad did or did not, in fact, take the children to meet his new girlfriend's family at Christmas. What was relevant to the trial court was whether or not Father willfully failed to comply with the Order. The trial court's finding of contempt by Father was not in any way based on where he went for Christmas, but rather the fact that this Court believed that Father knew Mother was supposed to have custody on Christmas Day and did not get it. When he had the opportunity to rectify the matter by returning to Mother's home with the children, he failed to do so. (See number 8 below).

Any other testimony (particularly considering the psychological state of child RPP, the only child's whose custody was slightly altered by the Order under appeal) was corroborated through the testimony of the children, the Mother, RPP's teacher Mr. Ham, and the DHS social worker Ms. Hall.

7

As a general rule, this trial court allows parents to testify about statements made by children as a way of gaining insight as to what the children may want to discuss during each child's interview. These statements are not considered for the truth of the matter and are therefore not hearsay. If the trial court's practice is considered an error, it is a harmless error since all of the out of court statements made by the children were either corroborated by other witnesses or the children themselves, or they were not considered in the court's custody and contempt determination in this matter. The trial court incorrectly categorized the children's testing as an "exception to hearsay" when in actuality it was not hearsay at all for the reasons stated above.

3. **The court erred by permitting petitioner-Mother to introduce inadmissible hearsay in the form of her own electronic mail correspondence to respondent as "evidence" of the truth of the matter asserted in those correspondences.**

Father did not object to the admission of the emails as inadmissible hearsay at the trial and therefore waived this objection. Numerous emails previously exchanged between the parties, were printed on paper, produced at trial, and entered as exhibits. N.T. June 4, 2015, p. 139, 154, 157, 162, 164, 168, 172, 199. N.T. November 10, 2015, p. 27. Father never objected to the admission of the emails based on hearsay. N.T. June 4, 2015, p. 139-202. N.T. November 10, 2015, p 27. On the record Father stated he had no objection to Mother's packet of emails – exhibit M-13. N.T. November 10, 2015, p 49. Mother testified on direct examination concerning the contents of the emails. N.T. June 4, 2015, p. 139-202. Father testified regarding the emails on cross examination. N.T. November, 10, 2015, p. 213-222, 228-240. Since Father failed to object to the emails as inadmissible hearsay in court he did not preserve the issue on appeal.

Regardless, the emails were not inadmissible hearsay. The statements made within the emails fall under the hearsay exception for opposing party's statements. Pa.R.Evid. 803(25). The

8

electronic mail correspondence that Father refers to consists of numerous emails sent between Mother and Father on an email account established specifically for custodial issues. The email account was established per a final Order of court entered by agreement of parties. (See Order dated June 7. 2011). The purpose of the account was to resolve communication issues between Father and Mother in relation to custodial issues concerning the parties' three minor children The Order, to which both parties agreed, also stated that email communications "may be considered evidence at any future custody proceedings." *Id.* Additionally, as previously stated, both parties gave testimony about the emails. Father, representing *pro se*, was also afforded the opportunity to cross-examine Mother in regard to the emails, but declined. N.T. November 10, 2015, p. 49, l. 18-21.

### 4. The court erred by ignoring Father's filed claims of contempt against petitioner-Mother.

Father did not have a Petition for Contempt before the court. Pa. R. Civ. P. 1915.12 requires a Petition for Contempt along with an Information Sheet shall be filed with the Clerk of Court, 1501 Arch Street, 11th Floor, Philadelphia, Pennsylvania, 19102. A petition for civil contempt shall begin with a notice and order to appear. Pa. R. Civ. P. 1915.12(a). The petition shall allege the facts that constitute willful failure to comply with the custody order. Pa. R. Civ. P. 1915.12(b). The petition for contempt is to follow substantially the format as set forth in Pa. R. Civ. P. 1915.12(c). The petition shall be served on the respondent by personal service or regular mail. Pa. R. Civ. P. 1915.12(d).

Here, Father asserted, "Father hereby prays that this court hold petitioner in contempt of court for abuse of process and filing annual, barratrous, vexations contempt filings." (See Father's Response to Petitioner's Serial Petitions for Contempt and Modification of Custody and Memorandum of Law in Support Thereof, dated January 26, 2015 at 8-9). Father cites criminal

9

code for barratry, a misdemeanor of the third degree; criminal case law for conviction of barratry, and a secondary source - About.Com. Regardless of Father's assertions, stated in a response to Mother's petitions, Father did not file a petition for contempt with the Clerk's Office. There is no entry of a petition for contempt. filed by Father. on the Docket. (See Docket). There is no mention of the Father's alleged petition for contempt in the trial court's Order dated June 4. 2015, which specifically listed Mother's three petitions continued to October 23, 2015. (See Order dated June 4, 2015). There is no mention of Father's alleged petition for contempt in the trial court's Order dated June 19, 2015 granting Father's motion for a protracted hearing. (See Order dated June 19, 2015). The June 19, 2015 Order stated that the protracted hearing is to resolve "...all of the claims raised by the opposing party in contempt of custody and modification of custody,...". *Id.* Therefore, Father did not have a petition for contempt before the court.

5. **The court erred by altering the long-standing custody schedule where doing so separated the children with no justifiable purpose and where the children were used to and comfortable with the schedule.**

Mother filed a petition to modify custody seeking primary physical custody of the parties' three minor children. Mother alleged, as a basis for the modification, that Father was uncooperative with her, and failed to parent in the best interest of the children. During the trial Mother used her testimony, and email exhibits to elaborate on what she characterized as a lack of cooperation. N.T. June 4, 2015, p. 135-182. Father asserted through testimony and exhibits that he was cooperating with Mother's email requests for information, and meeting the minimal cooperation necessary to support shared custody. N.T. November 10, 2015, p. 53-196.

A court may modify a custody order if it serve the best interest of the child. 23 Pa. C.S. § 5338(a). The burden of proof is on the petitioner to demonstrate that the modification would be

10

in the child's best interest. *Jackson v Beck,* 858 A.2d 1250, 1252 (Pa. Super. 2004). The trial court must consider all of the relevant factors enumerated in Pennsylvania's custody statute. 23 Pa. C.S. §5328(a) when granting a modification in custody. Set forth below are the trial court's finding of fact with regard to the sixteen factors. which form the basis for the modification in custody

1. *Which party is more likely to encourage and permit frequent and continuing contact between the children and another party.*

   While the parents struggle with communication issues, and Father was found in contempt of the custody order on a single occasion, there was no other evidence presented at the hearing that would make either party more likely than the other to encourage and permit contact between the children and the other party.

2. *The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the children or an abused party and which party can better provide adequate physical safeguards and supervision of the children.*

   This factor was not relevant to the case at bar.

2.1. *The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).*

   In the summer of 2014 DHS received a confidential report in regard to the child RPP. N.T. June 4, 2015, p. 70, l. 17-24; p. 71, l. 6-9. An investigation culminated in an unfounded report. *Id.* at p. 125, l. 3-5. Therefore, this factor is not relevant to the case at bar. However, the investigation itself presented several emotional issues pertaining to RPP as further discussed in factor 10 below.

11

3. *The parental duties performed by each party on behalf of the children.*

Both parties are equally capable of performing parental duties on behalf of the children and both are adequate caretakers. They have both performed these duties on behalf of the children for an extended period of time

4. *The need for stability and continuity in the children's education family life and community life*

The parties have maintained shared custody of the children on a weekly basis since June 7, 2011. There were two custody exchanges per week, per child. The weekly custodial exchange of the children took place on Friday evenings at 7:00PM. There was an additional custodial exchange every Wednesday from after school/camp to Thursday morning at school/camp exercised by the non-custodial parent for the week. (See Order dated May 17, 2013). During the children's interviews two children expressed a desire to change the custody to one custodial exchange per week. N.T. Sealed Interviews, p. 5, l. 7-12; p. 14-16. The children were articulate. The current Order was described as "hard", "annoying" and "sick." *Id.* at p. 5-6, 39, 41-42. The custody order was changed to reflect a well-reasoned request, by two of the three children, and to make the custody arrangement less confusing and more stable for the children.

5. *The availability of extended family.*

No evidence was presented at trial that was relevant to this factor.

6. *The children's sibling relationships.*

The three children maintain their sibling relationship. In the new Order RPP is separated from his two siblings for one day every other week. When the children were asked about this separation they did not find it to be onerous.

12

7. *The well-reasoned preference of the children, based on the children's maturity and judgment.*

Judge Ford interviewed the children *in camera*. The trial court found the children intelligent and articulate. During the individual interviews two children expressed a desire for the change in custody from two custodial exchanges a week to one custodial exchange a week. The third child was neutral on the subject. (See number *4* above).

Along with the aforementioned change, one child, RPP, expressed a well-reasoned desire to spend more time with Mother. RPP communicated his "coughing problem" as the main reason for the request. N.T, Sealed Interviews, at p. 7. RPP elaborated that Mother is readily able to cope with the coughing, while Father has difficulty with RPP's coughing. *Id.* at p.7-9, 23, 26. RPP was concerned about being "mean" by requesting more time with Mother, and reiterated that he only wanted a little more time with Mother and a little less time with Father. *Id.* at 15.

8. *The attempts of a party to turn the children against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.*

No evidence was presented at trial that was relevant to this factor.

9. *Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for the children's emotional needs.*

Both parents have maintained a strong, loving relationship with the children. See below for the rationale on children's emotional needs.

*10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.*

While both parents are equally willing and able to provide for the daily physical. and educational needs of the children, Father lacks the ability to accept that the RPP's emotional needs are changing and need attention.

Robert Ham. RPP's teacher. testified about an email concerning RPP's behavior, which was sent to Mother. The email described RPP's behavior as being fidgety, distracting and generally not listening to adults for the day. It went on to state that the RPP expressed to Ham that he was upset about the recent death of a family member. The email ended by stating that no disciplining action was taken. N.T. June 4, 2015, p. 32, l. 1-19. On cross, Father, appearing *pro se*, questioned Mr. Ham for an extended period of time - 32 pages of testimony. During that time Father never asked about RPP's expression of distress over the loss of a family member. *Id.* at 33-65. Father's questioning culminated in establishing that RPP's is a "model student" an honor student with outstanding behavior. *Id.* The specific behavioral issues expressed by Mr. Ham were avoided by Father.

Erica Hall, social worker, testified that in the summer of 2014 a report was made to DHS concerning the child RPP. *Id.* at p. 70, l. 19-p. 71, l. 9. The report was unfounded, but Hall testified that RPP admitted to masturbating, and wetting the bed when he was upset or stressed. *Id.* at p.75, l. 7; p. 77, l. 17-20. After an appointment with the Philadelphia Children's Alliance, to confirm that the children were not being exposed to inappropriate material and were not being molested, the investigation was closed. *Id.* at p. 83, l. 7-10. Hall testified that the children could still benefit from counseling. *Id.* at l. 10-13.Hall furthered that

14

Mother wanted to get counseling for the children, but Father felt the children did not need counseling. *Id.* at p. 83, l. 20 – p. 84, l. 12.

Mother testified about RPP's masturbatory behavior. *Id* at p. 183, l. 15-p 184. l. 16. Mother also testified about RPP's distraught behavior following his prior bad day at school. *Id* at p. 186. l. 5-16. Mother recorded RPP's behavior after he asserted to Mother that he wanted to "suicide myself." *Id.* at l.11-12. The recording was played for the court. *Id* at p. 192, l. 16 – p. 198, l. 11. RPP cried throughout the recording, and some parts were inaudible, but it was clear that the child was distressed and overwhelmed. *Id* There was no cross-examination of this witness.

Father. on cross-examination. testified that he did not directly discuss the allegations of RPP's masturbation in front of his mother and sisters with the child. N.T. November 10, 2015, p. 248, l. 16-20. Father was evasive on the subject of RPP's masturbation when testifying. *Id.* at p. 248, l. 16-p.252, l. 25. At one point Father testified, "I have no information whether he - - what exactly was the nature of what, if anything, he may have done. I don't even know that he did anything." *Id.* at p. 249, l. 7-9. On the subject of suicide, Father testified, "RPP has never said anything in my custody even remotely alluding to suicide. Never, ever." *Id.* at P. 147, l. 23-25. "RPP is an eloquent, intelligent 10 year-old boy, and to say, "I want to suicide myself," is nonsense. That's not something he would say. It's not his diction." *Id.* at p. 148, l. 7-10. On the subject of bedwetting Father testified that RPP has not had a bed wetting incident for approximately a year and a half, and only wets the bed if he stays up past 10 p.m. *Id.* at p 156, l. 19-p.158, l. 1.

15

Father further stated, "And - - I understand that - - the report was that RPP wets the bed when he's upset. but he doesn't. He doesn't." *Id.* at p. 158, l. 8-7.

Mother was open. and willing to discuss RPP's emotions and behavior with Robert Ham. Erica Hall. and the trial court. Mother was seeking assistance in addressing the somewhat common childhood issues of young men learning about their bodies and masturbating, and children that become sad and/or overwhelmed due to the loss of a loved one or other life circumstance. The trial court did not get the sense that anyone was to "blame" for these often common childhood situations, however, they do exist, and they need to be addressed. As previously stated, RPP's emotional needs are changing. Father's testimony reflects that he does not recognize any of the aforementioned issues. Mother recognizes the issues and is more likely to address the children's daily emotional needs (especially as to RPP).

11. *The proximity of the residence of the parties.*

Both parties live in the County of Philadelphia making facilitation of shared custody possible.

12. *Each party's availability to care for the children or ability to make appropriate child-care arrangements.*

Both parents are available to care for the children and to make appropriate child-care arrangements when necessary.

16

*13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's efforts to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with the party.*

Throughout litigation. and twice in this appeal. Father incorrectly asserted that the "standard of law" governing cooperation between parents in a shared physical custody agreement is a "minimal degree of cooperation." In fact, a minimal degree of cooperation is required before a court may award shared physical custody of the children between the parents. Nevertheless, that is the minimum and not the optimal standard. Father indicated in his testimony that he has minimal cooperation with Mother and unfortunately he does. N.T. November 10, 2015, p. 1947, l. 15-18. However, he fails to realize that it would be better for the children and the parents if a higher level of cooperation could be reached between them.

Father's cooperation in parenting with Mother is minimal. Mother makes use of the custodial email account, and Father does respond to all emails. However, Father does not always respond promptly, and his replies are often not fully responsive to Mother's emails. Based on the totality of the parents testimony and the totality of the parents use of the custodial email account Mother would be more willing to cooperate with Father than vice versa.

*14. The history of drug or alcohol abuse of a party or member of a party's household.*

This factor was not relevant to the case at bar.

*15. The mental and physical condition of a party or member of a party's household.*

Neither party has any known mental or physical condition that would inhibit them from properly caring for the children.

17

*16. Any other factor.*

An analysis of the fifteen (15) factors above were considered by the trial court.

No other factors were apparent.

### 6. The court erred by quoting the law of the Commonwealth governing cooperation by custodial parties and explicitly instructing the parties to disobey that law.

A minimal degree of cooperation between the parties is a necessary requirement for a court to award shared physical custody of the children to the parties. Indeed, this is the floor and not the ceiling for communication between parties with shared custody of minor children.

> A minimal degree of cooperation does not translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parent be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor. *B.C.S v. J.A.S.* 994 A.2d 600, 603 (Pa. Super. 2010) citing *In re Wesley J.K.*, 445 A.2d 1243, 1249 (Pa. Super. 1982).

As stated above, amicability is not required for shared custody, but would be the preferred relationship. Therefore, the court did not instruct the parties to disobey the law. There is no law preventing reasonable communication between parties with shared custody. Nonetheless the trial court stated, "The parties are not to strive for 'minimal cooperation' but rather full co-parenting skills." This statement is not an order to be amicable, but an order to fulfill their role as parents. Father and Mother need to separate their difficulties in communicating from their roles as parents, so the children are not negatively affected by the acrimony between the parents and their "minimal" communication.

### 7. The court erred by forcing the custodial parties to communicate regularly in direct contravention to the law of the Commonwealth.

The trial court Order contains language requiring the parties to cooperate and communicate with each other in regard to medical appointments, extracurricular activities, and school projects.

18

Neither party is to have any of the children seen by a physician or dentist (except in an emergency) without prior written notice of the date and time of the appointment to the other party.

The parties must cooperate with each other on the children's extracurricular activities and projects. If either side wishes to sign one of the children up for any activity. they are to e-mail the other side with the details and costs of the activity If the other side agrees in writing. the child may participate in that activity. If the other side does not agree in writing, the child may not be enrolled in the activity absent further written agreement (e-mail) of the parties or further court order. If the requesting party does not receive any answer within four (4) days or ninety-six hours of the initial request, the child may be enrolled in the activity. The parties are not to strive for "minimal cooperation" but rather full co-parenting skills. (See Order dated December 22, 2015).

In addition to the rationale stated in number six (6), it is in the best interest of the children for parents in shared custody arrangements to communicate. Insufficient cooperation and/or communication could potentially expose the children to unnecessary, duplicate medical appointments; frustration from conflicting extracurricular activities, and/or burden the children with unnecessary, duplicative work on school projects.

8. **The court erred by finding Father in contempt of violating the Christmas custody schedule where Father testified that he made an honest mistake for which he apologized to petitioner and attempted to rectify the situation, and petitioner herself testified that she believed Father was "sincere" in that representation.**

The Order in place December 25, 2014 stated in part:

> Christmas Eve from 7:00 P.M. to Christmas Day at 12:00 P.M. with mother in odd years: father in even years.
> Christmas Day from 12:00 P.M. to December 26th at 7:00 P.M. with mother in even years: father in odd years.

A finding of contempt requires: (1) the contemnor have notice of the Order; (2) the act committed by the contemnor was volitional, and (3) the act was committed with wrongful intent. *Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa. Super 2009). The aggrieved party bears the burden to show non-compliance with the Order by a preponderance of the evidence. *Goodman v. Goodman*, 556 A.2d 1379, 1391 (Pa. Super. 1989).

19

On June 7, 2011 an Order was entered, by agreement of the parties, which contained the above-stated Christmas custody schedule. (See Order dated June 7, 2011). On May 17, 2013 an Order was entered, by agreement of the parties, which contained the same Christmas schedule. (See Order dated May 17. 2013). The parties had utilized that same Christmas schedule since Christmas of 2011, and the time in question would have been the fourth time the Christmas schedule was utilized.

On December 25, 2014 Mother made numerous attempts to exercise her Christmas custodial time with her children. Mother arrived at Father's home at 12:00 P.M., knocked on the door and rang the bell, but received no response. She sent an email to the custodial email account and a text to Father's phone. N.T. June 4, 2015 at 136-137. There were numerous texts back and forth, including a photo of the custody Order sent from Mother to Father. *Id.* at 141- 143. Mother called Father's mother's home. *Id.* at 137. The minor children RPP and SP answered the phone. *Id.* at 138. Mother could hear Father's voice in the background conversing with the children, but Father did not get on the phone. *Id.* At 7:13 P.M Mother sent another text message to Father's phone asking for her 7:00 P.M. phone call from the children, but there was no response. *Id.* at 143-144. Father not only failed to return the children (despite the fact that they were within two hours traveling time from Mother's home), he also failed to allow her to have her 7:00PM phone call.

Mother testified that on December 27, 2015 she received an email from Father. In the email Father apologized for the error he made regarding Christmas custody. N.T. June 4, 2015 at 144. Mother testified that she responded, "Due to the lack of consideration or cooperation you have shown in the four-plus years we have been separated, I do not believe this apology. In fact, I think the entire incident was purposeful." *Id.* at 145. Mother further supported her doubts of

20

Father's sincerity throughout several pages of testimony. *Id* at 145-152. Within that testimony the Mother stated that, "The other reason include - - while the apology sounds - - it does sound sincere, this is the only email in all of our time that was not written in legalese or - -". *Id.* at 147. When this statement is placed in the context of the testimony as a whole. it is clear that Mother believes Father's failure to return the children at Christmas was a purposeful. contemptuous act. and not a "sincere" apology for a "honest mistake" as Father would proffer.

The trial court found that the Father had notice of the Order. Father testified that the Christmas custody schedule in the May 2013 Order had been in place, and utilized without incident. since 2011. N.T. November 10, 2015, p. 206-207. Father violated the Order when he failed to surrender custody of the children to Mother on December 25, 2014 at 12:00 P.M. Father committed the act willfully with wrongful intent. Father is an attorney and familiar with how to read a court order. *Id.* at 206. The Christmas custody schedule had been followed for three years without incident. *Id.* at 206-207. If Father had mistakenly failed to follow the Order and return the children at 12:00 P.M. he had several opportunities to correct his error. He could have returned the children when he received Mother's photo text of the Order, which pointed to the specific language in the Order that gave Mother custody of the children at 12:00 P.M. on Christmas day in even years. Father testified that he had received Mother's text on Christmas Day. *Id* at 211. Likewise, he could have returned the children when Mother called Father's mother's home, where the children and Father were located at the time. Again Father chose to ignore Mother, and refused to return the children to Mother's custody despite the fact that the children were in Springfield, Pennsylvania, Delaware County, a relatively short travel time to Mother's home. Father continued with his preplanned trip and traveled to Lehigh County with

21

the children despite Mother's urgent requests. *Id* at 209. Father willfully failed to follow the court Order of which he was well versed, and was in contempt of the Order.

9. **The court erred by again incorrectly rendering the terms of the annual New-Years-Eve-through-January-2nd custody schedule to reflect the opposite of its stated intention at trial.**

The December 22, 2015 Order states:

> New Year's Eve from 7:00 P.M. to New Year's Day at 12:00 P.M. with mother in odd years and father in even years.
> New Year's Day from 12:00 P.M. to January 2nd at 7:00 P.M. with mother in **even** years and father in **odd** years.

The order should state:

> New Year's Eve from 7:00 P.M. to New Year's Day at 12:00 P.M. with mother in odd years and father in even years.
> New Year's Day from 12:00 P.M. to January 2nd at 7:00 P.M. with mother in **odd** years and father in **even** years.

This was the New Year's holiday schedule contained in the May 17, 2013 Order, by agreement of parties, and this was not disturbed by the trial court. The Order contains a typographical error. The words even and odd were inverted in the second paragraph. The error should be corrected to give each parent custodial time on the holiday.

10. **The court erred as a matter of law in imposing attorney's fees on Father.**

Sanctions for civil contempt can be imposed to compel obedience to a court order and/or to compensate the injured party. *Mrozek v. James*, 780 A.2d 670, 674 (Pa. Super. 2001). Attorney's fees incurred by the aggrieved party, due to the contemnor's noncompliance, may be recovered in civil contempt. *Id.*

Here, Mother filed a Motion for Contempt on December 29, 2014. On December 22, 2015 Father was found in contempt of the custody Order dated May 17, 2013. Father was ordered to pay $500.00 in counsel fees to Stephen Older, counsel for Mother, for the necessity of filing and

22

arguing the Motion for Contempt. The sanctions were meant to be coercive and compensatory, not punitive. In fact, the sanction was well below the attorney's fees actually incurred by Mother because of Father's contemptuous behavior.

11. **Conclusion**

Based on the best interest of the children, custody was modified for two children, SP and EP, to a weekly basis with one custodial exchange per week. Based on the best interest of the child, RPP, custody was modified to one custodial exchange per week between Father and Mother. In addition, Mother will maintain custody of RPP every Thursday from 7:00PM to Friday at 7:00PM, to allow RPP some additional time with Mother.

Father was found in contempt of the May 17, 2013 Order for his actions concerning Christmas 2014. The other petition for contempt was dismissed after a hearing with no finding of contempt.

The Order contains a typographical error in the New Year's Day custody schedule, which the trial court will gladly amend. The remainder of the errors that Father complained of on appeal lack any basis in the evidentiary record, applicable statutes or case law. It is respectfully requested that the findings of the trial court be affirmed.

BY THE COURT:

_July 19, 2016_
DATE

_[signature]_

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

FEB 1 9 2016
FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

23