J-A13022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| STEWARTSTOWN RAILROAD COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES DAVID CATHELL, SR. | : | |
| | : | No. 1581 MDA 2022 |
| Appellant | : | |

Appeal from the Order Entered October 21, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2021-SU-002455

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, J.:          **FILED: JULY 26, 2023**

James David Cathell, Sr., appeals from the order, entered in the Court of Common Pleas of York County, granting Appellee Stewartstown Railroad Company's (Railroad) motion for civil contempt and imposing sanctions against Cathell in the amount of $1,000.00 in attorneys' fees and $500.00 in fines for each finding of contempt.  After careful review, we affirm.

Cathell owns property located at 1517 Deer Creek Road in New Freedom, York County (Property).  A previous owner of the Property granted Railroad[1] a thirty-three foot right-of-way (easement) over the Property.  The

---

* Former Justice specially assigned to the Superior Court.

[1] The Railroad operates approximately 7.4 miles of track, running from New Freedom to Stewartstown, over which it conducts a "historic train tourism" business "operat[ing] excursion trains of various kinds over the line."  N.T.
*(Footnote Continued Next Page)*

easement, memorialized in a deed recorded on July 20, 2010 with the York County Recorder of Deeds Office, was signed and notarized by Cathell. As per the easement, the Railroad "maintains the right to unobstructed use of the railroad through the Property." Railroad's Amended Complaint, 12/27/21, at ¶ 13.

Due to Cathell's obstructionist behavior, which included parking a tractor on the Railroad's tracks to inhibit the use of the railroad and placing personal property within the boundaries of the easement to obstruct its use, the Railroad filed a complaint seeking the court declare the Railroad's right to use the easement, grant an injunction prohibiting Cathell from obstructing the Railroad's use of the easement, and declare that Cathell was interfering with an express easement and creating a nuisance by his actions. Cathell filed preliminary objections to the complaint; the Railroad filed an amended complaint on December 27, 2021. On April 22, 2022, the court overruled Cathell's preliminary objections. Cathell filed an answer and new matter to Railroad's amended complaint.

On July 28, 2022, the Railroad filed a petition seeking a preliminary injunction against Cathell, alleging that Cathell's "disruption and blocking the

Preliminary Injunction Hearing, 8/18/22, at 5. Railroad also conducts a rail biking business where people "can ride pedal powered road bikes over the line." *Id.* at 44. Cathell's Property is bisected by the railroad on Deer Creek Road—approximately mile post 4.5 on the railroad—near the Railroad's mid-point. *Id.* at 6. Railroad employees instruct excursion riders to stay on the railcars or bikers to stay on the right-of-way as they traverse the Property. *Id.* at 33-34.

use of the railroad has worsened in recent weeks." **See** Petition for Preliminary Injunction, 7/28/22, at ¶ 8. Specifically, the petition averred that Cathell had been arrested by the state police for using tractors to block the use of the railroad, yelled and threatened Railroad agents while they used the railroad, and had been encouraging neighbors and family members to join him in disrupting the use of the railroad on the Property. **Id.** at ¶¶ 9-13; **id.** at 2 ("Cathell has had a long history, dating back to 2015, of blocking and disrupting the use of the [R]ailroad[.]"); **id.** at 3 ("[Cathell] continued his disruption of the [R]ailroad by prohibiting [Railroad] and its agents from traveling on the railroad through the Property on Sunday, **July 24, 2022**.") (emphasis added).

On August 18, 2022, the court held the first of two hearings on the petition. At the hearing, the Railroad's president, David Williamson, testified that Cathell's behavior had "disrupted the railroad operations" and . . . "had a very large impact" on its customers, making them "upset [and causing them to] threaten to make posts on social media [that would] damage [the Railroad's] reputation . . . and integrity in the community." N.T. Preliminary Injunction Hearing I, 8/18/22, at 31. Williamson also testified that "we've observed Mr. Cathell damaging the tracks and we feel the tracks may not be safe to operate under." **Id.** at 32. Following that hearing, the court entered a temporary restraining order (TRO), effective through August 25, 2022, prohibiting Cathell from: (1) blocking Railroad's use of the easement; (2) yelling, threatening, or otherwise attempting to intimidate or disrupt

Railroad's use of the easement; and (3) damaging or modifying the railroad tracks. *See* Temporary Restraining Order, 8/18/22, at 1-2; N.T. Preliminary Injunction Hearing I, 8/18/22, at 73-74.

On August 25, 2022, the court held a second day of hearings, at which Carol Schwartz, one of Cathell's neighbors, and Cathell testified on behalf of the defense. Schwartz testified that Cathell suffers from PTSD and has mental issues that cause him to "act erratically when [he's] approached suddenly by people or if [he] feel[s] threatened or if something changes quickly." N.T. Preliminary Injunction Hearing II, 8/25/22, at 14. Cathell admitted that he parked tractors on the railroad track, placed his own body on the tracks to prevent people from passing by, and "blew up [and] was angry [and] wasn't really thinking" when he reacted to tourists using bikes to traverse the easement in July. *Id.* at 32-33, 36. Following the hearing, the court entered an order extending the effective date of the original TRO to September 6, 2002, or until further order of court. *See* Order Extending TRO, 8/25/22, at 1.

On August 28, 2022, Railroad alleged that Cathell disrupted its use of the easement by demanding identification from Railroad employees using the easement and yelling and threatening those employees. Specifically, Railroad claimed that Cathell told its employees that people shoot guns near the Property and that someone might get shot if they are on the Property.

Following an August 30, 2022 hearing,[2] the trial court granted a preliminary injunction prohibiting Cathell from

> blocking [Railroad's agents, lessees, and/or employees'] use of the [e]asement . . and from being disruptive to [Railroad's agents, lessees, and/or employees'] use of the [e]asement by **yelling, threatening[,] or otherwise attempting to intimidate or otherwise disrupt in any way** [**Railroad's**] **use of the express right-of-way**. [Cathell] is further prohibited from damaging and/or modifying the railroad tracks in any way.

**See** Preliminary Injunction Order, 8/30/22 (emphasis added).

On September 2, 2022, the Railroad filed a motion for contempt claiming that Cathell violated the court's August 18, 2022 and August 25, 2022 orders and alleging that Cathell's August 28, 2022 antics demonstrated that he is in "willful violation of this [c]ourt's . . . [o]rder[s] without any justification or excuse." Motion for Order of Contempt, 9/2/22 at ¶ 8. The Railroad asked that Cathell be found in civil contempt and directed to pay $500.00 in attorneys' fees per violation and a $1,000.00 civil penalty, and that the court enter default judgment in its favor and issue a bench warrant for Cathell's arrest. *Id.* at 3-4.

On October 21, 2022, the court held a hearing on the Railroad's contempt petition, at which Cathell and two Railroad witnesses, David Dolinsky and Williamson, testified. Dolinsky, an employee of a business that operates rail bikes on the Railroad's tracks, testified that Cathell has had a

---

[2] Because the court only had time to hear from one of the Railroad's witnesses on August 18th, the court scheduled a second hearing date on the Railroad's petition to permit Cathell to rebut the Railroad's evidence.

"[v]ery negative impact [on his business,] caus[ing them] to have delays and [their] customers to feel threatened as well as . . . embarrass[ing] us as a [business]." N.T. Contempt Petition Hearing, 10/21/22, at 7. Dolinsky related the following events that took place on August 28, 2022:

> On **August 28th** [2022,] which was the day of our trip, at 10:27 a.m.[,] I received a text from [Cathell] in which he stated that he needed to take photos of all of the IDs of our company employees that were coming through the property, as he claimed they were, quote, casing his property.
>
> *    *    *
>
> At that time[, Cathell] was walking his dog. He was coming back to his home. We had approximately 40 people standing on the roadway. He began screaming belligerently at the top of his lungs that everybody was trespassing, nobody wants them here, and it was karma that several of our riders had gotten bit by bees because they weren't welcome there.
>
> He then began yelling that people, our riders, might get shot because people who live in these homes in this area shoot guns in their backyard. He was telling people they may get shot if they're in this area.

*Id.* at 9-10 (emphasis added). Dolinsky further testified that, based on Cathell's behavior on August 28th, his customer's felt "threatened . . . [t]hey were just very upset [and a] lot of the older customers were kind of shaken." *Id.* at 11. In fact, Dolinsky believed that one of his customers actually called the police the following day to file a report against Cathell. *Id.*

Williamson, who had previously testified at the parties' preliminary injunction hearing, testified that he had had "numerous interactions with [Cathell] from the period of 2010 to the present." *Id.* at 21. Specifically,

- 6 -

Williamson testified that, on September 17, 2022, one of Cathell's tenants "sat on a tractor or piece of equipment for about five minutes[,] looked up at us . . . [and told us that we were] trespassing on [the P]roperty, [that we] can't be [t]here, [and that] nobody wants you down here." *Id.* at 22. Williamson also testified that Cathell then came on site and told him that "[y]ou guys are trespassing," ordered him to "[g]et off my property . . . [and said that n]obody wants you here." *Id.* at 23. Cathell also told Williamson and Railroad employees that "you're all warned that you're exposed to toxic chemicals, and I've warned you of that." *Id.* Williamson testified that Cathell's remarks and behavior made everyone feel "scared and [] threatened [and,] on the advice of [their] attorney, had to have armed security to accompany us on that day." *Id.* Williamson testified that even with armed security present, Cathell and his tenant "continued to watch and follow us throughout [the day] as we were there on the [P]roperty." *Id.* at 24. Finally, Williamson testified that "the fear [still] exists, and nobody wants to go there and do any work" on the Property and that as a result of these events, "it doesn't bode well for our business and our people[.]" *Id.* at 25.

Cathell testified in his defense at the contempt hearing, acknowledging that he encountered Dolinsky on the Property on August 28, 2022, that he "felt like [the trailway bikers] were not supposed to be on the railroad tracks using the tracks the way there were[,] and nobody wanted them there[.] I just told them that they were not welcome[.]" *Id.* at 29. Cathell testified he did not yell at, scream at, or interfere with the passage of anyone through the

Property on August 28th. *Id.* at 29. Cathell also testified he never intended to intimidate anyone that day, but felt he was obligated to let people know that target shooting occurs on his Property and that they were at an increased risk of pollution by being on the Property due to ground pollutants. *Id.* at 30-32.

Similarly, Cathell testified that he recalled his interaction with Williamson and several Railroad associates on September 17, 2022. On that date, Cathell testified that he told the Railroad employees he "was happy that they were cleaning up the tracks [and] told them what chemicals were [on the Property]." *Id.* at 33-34. Cathell stated that he did not threaten any of the Railroad employees "in any way [or] prevent them from doing their work[.]" *Id.* 33. Cathell further testified that it was never his intent to threaten or intimidate them on that day. *Id.* at 34. The trial judge, ultimately, found Cathell's testimony not to be credible. *Id.* at 41. Following the hearing, the court made on-the-record findings that Cathell's conduct was volitional, *id.* at 41, 43, violated court orders, *id.*, and that Railroad met its burden of proving civil contempt. *Id.* Specifically, the trial judge concluded that "the [Railroad] here has shown civil contempt: (1) "with respect to the August 28th incident . . . that . . . would have been subject to this [c]ourt's August 18th order," *id.* at 39, 42, and (2) "[w]ith respect to the September 17th incident, that would have been governed by the preliminary injunction of August 30, 2022." *Id.*

Cathell filed an unsuccessful motion for reconsideration. This timely appeal followed. Both Cathell and the trial court have complied with Pa.R.A.P. 1925. On appeal, Cathell raises the following issues for our consideration:

(1)  Did the [t]rial [c]ourt abuse its discretion in holding [Cathell] in contempt and awarding sanctions where his conduct did not violate the [c]ourt's prior order(s)?

(2)  Did the [t]rial [c]ourt abuse its discretion and misapply the law where it held [Cathell] in contempt despite no evidence that [Cathell] acted with wrongful intent?

(3)  Did the [t]rial [c]ourt abuse its discretion when awarding sanctions that were punitive in nature, as well as arbitrary and excessive?

(4)  Did the [t]rial [c]ourt err in its finding that speech alone can form the basis for finding of [c]ontempt and [s]anctions?

Appellant's Brief, at 5.

The power to punish for contempt is a "right inherent in the courts and is incidental to the grant of judicial power under the Constitution." *In re Estate of Disabato*, 165 A.3d 987, 992 (Pa. Super. 2017). Contempt may be either civil or criminal. "The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive." *Sinaiko v. Sinaiko*, 884 A.3d 1005, 1009 (Pa. Super. 1995). "If [the contemnor] is given an opportunity to purge himself before imposition of punishment, the contempt [o]rder is civil in nature. [However, i]f the purpose of the [o]rder is to punish despite an opportunity to purge, the [o]rder is criminal in nature." *Id.*

> For a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or

decree that he disobeyed; (2) the act constituting the violation was volitional; and (3) the contemnor acted with wrongful intent. ***Marian Shop, Inc. v. Baird***, [] 670 A.2d 671, 673 (Pa. Super. 1996). The order alleged to have been violated "must be definite, clear, and specific--leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct" and is to be strictly construed. ***Id.*** (emphasis in original).

***Gunther v. Bolus***, 853 A.2d 1014, 1017 (Pa. Super. 2004). Finally, in reviewing an adjudication of contempt, the appellate court places great reliance on the sound discretion of the trial judge. ***Goodman v. Goodman***, 556 A.2d 1379, 1380 (Pa. Super. 1989).

Instantly, Cathell conceded at the contempt hearing that notice of the orders that he allegedly disobeyed was not an issue.[3] ***See*** N.T. Contempt Hearing, 10/21/22, at 35. With regard to whether Cathell's conduct was volitional, the trial court concluded that Cathell's actions disrupted the Railroad's use of the easement and constituted an attempt to scare and intimidate the trail bikers. Finally, the court concluded that Cathell acted with wrongful intent, noting "Mr. Cathell's been in this courtroom enough now in the course of these hearings to know what behavior is acceptable and what behavior is not [and] that it is not [his] obligation to tell [passersby] about

_____

[3] The Railroad's contempt petition alleges that Cathell violated the court's August 18, 2022 and August 25, 2022 TROs based on Cathell's behavior on August 28, 2022. However, the court concluded that Cathell committed civil contempt of its August 18, 2022 TRO and August 30, 2022 preliminary injunction based on Cathell's conduct on August 28, 2022 and September 17, 2022, respectively. Since Cathell conceded that there was no issue regarding having received "notice of the specific order or decree that he disobeyed," ***Gunther***, ***supra***, at 1017, any claim regarding notice has been waived.

the reasons you think the land is poisoned." *Id.* at 43-44.[4] After a review of the record, and giving the trial judge the deference he is due, we conclude that there is no merit to Cathell's first two issues regarding the propriety of the civil contempt finding.

Cathell next contends that the trial court abused its discretion when it awarded sanctions that were punitive, arbitrary, and excessive. We disagree.

---

[4] Notably, the trial court stated the following at the contempt hearing before issuing its sanctions:

> Now, Mr. Cathell, before I move to the imposition of sanctions, I want to make something incredibly clear, because I thought I made it clear when I issued the temporary restraining orders, and I thought you understood it, but it's becoming clear that you don't.
>
> Until there is a different order from this [c]ourt that says so, these folks have the right to use that right-of-way. They have the right to use that right-of-way without being harassed by you, without being questioned by you, without having to be advised by you that they're on poisonous property.

N.T. Contempt Hearing, 10/21/22, at 44. While "the order alleged to have been violated 'must be definite, clear, and specific--leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct,'" *Gunther*, *supra* at 1017, the court's discourse above is not proof that the court's orders were not, in fact, clearly written outlining the definitive, prohibited conduct at issue. Rather, the court's dialogue stresses how important it is for Cathell to abide by the orders and permit legal use of the easement over the Property or suffer further court or police action. In fact, the court found it imperative to caution Cathell that "[i]f [he] can't govern his behavior . . . perhaps he should look at moving from the [P]roperty . . . because continued behavior like this is not going to end well for you, so maybe it's time to look at other options to keep yourself from getting in further legal trouble." N.T. Contempt Hearing, 10/21/22, at 45.

The trial court imposed the following sanctions, orally on the record, at the contempt hearing:

> This is civil contempt, and the goal of civil contempt is to gain compliance with the [c]ourt's [o]rder. It's not to impose punishment. In order to encourage Mr. Cathell to comply with the [c]ourt's [o]rder, we enter the following sanctions as follows: He shall pay $1,000 in attorney fees to Plaintiff's counsel, Barlye & Snyder. For each of the counts, he shall pay a $500 fine. We will give Mr. Cathell 90 days to pay these and further direct that the attorney fees be paid first before the fines.
>
> Should Mr. Cathell fail to pay these sanctions within the 90 days allotted, we then direct that he report to York County Prison to serve 30 days of incarceration.
>
> Should he fail to pay the attorneys['] fees and the fines and fail to report to York County Prison as directed, he should be advised we will then issue a bench warrant for his failure to appear, and he will be taken into custody and taken to York County Prison to serve the sentence for his failure to purge.

N.T. Contempt Hearing, 10/21/22, at 45.

While a court may impose an unconditional fine in civil contempt, it may do so only if the purpose is not to punish but to compensate for losses suffered by the complainant. *Colbert v. Gunning*, 533 A.2d 471, 472 (Pa. Super. 1987). Moreover, "[a]n unconditional fine for civil contempt can serve two purposes: (1) to punish violators or (2) to deter future or continued violations of the law. The deterrence of continuous or future violations of a court order is a legitimate interest to be served by the levy of an unconditional fine." *Id.*

In addition, when reviewing a grant of attorney's fees, we will not disturb the decision below absent a clear abuse of discretion. *See, e.g., Brenckle v. Arblaster*, 466 A.2d 1075, 1078 (Pa. Super. 1983); *Shearer v.*

***Moore***, 419 A.2d 665, 669 (Pa. Super. 1980).  Because an award of counsel fees "is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent," ***American Mut. Liability Ins. Co. v. Zion & Klein, P.A.***, 489 A.2d 259, 262 (Pa. Super. 1985), it is "coercive and compensatory, and not punitive." ***See Schnabel Assoc. v. The Building and Construction Trades Council of Philadelphia and Vicinity, AFL-CIO***, 487 A.2d 1327, 1338 (Pa. Super. 1985).  Thus, counsel fees are a proper element of a civil contempt order.  ***Id.***; ***see Goodman v. Goodman***, 556 A.2d 1379, 1391 (Pa. Super. 1989).

Here, the trial court concluded that $1,000.00 in attorneys' fees was a reasonable sanction based on the amount the Railroad paid its attorney to draft the contempt petition and prepare for and attend the hearings. Furthermore, the court found that sanctioning Cathell $500.00 for each of his two violations was appropriate to coerce him to comply with court orders.  We find no abuse of discretion.

With regard to Cathell's final claim that speech cannot form the basis of a contempt finding, we find this claim waived for his failure to include it in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2023